**Richard Patrick WILSON and Billy Don Wilson, Appellants–Plaintiffs,**

**v.**

**Gene ISAACS, Sheriff of Cass County, and Brad Craven, Appellees–Defendants.**

**No. 09A05–0906–CV–344.**

Court of Appeals of Indiana.

Dec. 15, 2009.

William E. Beck II, Kokomo, IN, Attorney for Appellants.

Ian L. Stewart, Michael R. Morow, Stephenson Morow & Semler, Indianapolis, IN, Attorneys for Appellees.

## OPINION

KIRSCH, Judge.

Richard Patrick Wilson ("Patrick") and Billy Don Wilson ("Billy") (collectively, "the Wilsons") appeal the trial court's grant of summary judgment in favor of Gene Isaacs, Sheriff of Cass County and Deputy Brad Craven (collectively, "the Sheriff"). The Wilsons raise the following restated issues:

I. Whether the trial court erred when it granted summary judgment in favor of the Sheriff on the basis that the Sheriff was immune from liability for injuries caused by the enforcement of a law pursuant to the Indiana Tort Claims Act ("ITCA"), Indiana Code section 34–13–3–3(8); and

II. Whether the trial court erred when it granted summary judgment in favor of Deputy Craven because the Wilsons are barred under Indiana Code section 34–13–3–5 from pursuing a claim against him individually for actions taken within the scope of his employment.

We affirm in part, reverse in part, and remand.

## FACTS AND PROCEDURAL HISTORY

In September 2006, Deputy Craven was a volunteer reserve deputy with the Cass County Sheriff's Department, working an average of twenty-four hours per week. He had held this position since 2000 and completed a 40–hour "pre-basic" course at that time. Like other Cass County reserve deputies, Deputy Craven received a take-home car, clothing allowance, life and death benefits, and disability benefits in exchange for his employment with the Sheriff's Department. The Sheriff's Department also issued him a badge, a Taser, a handgun, a shotgun, and a can of mace. On March 6, 2005, Deputy Craven received certification in the use of a Taser by a certified instructor.

On September 10, 2006, the town of Young America, located in Cass County, Indiana, had its annual fish fry, and several people were hosting backyard parties. Billy was one of those throwing a party at his house; the party started around 8:00 p.m. and alcohol was being served. Town residents stopped by the party to visit, and at times, there were approximately thirty people in attendance. Before the party, Billy consumed two beers, and between 8:00 p.m. and 12:00 midnight, he drank four more beers and six to eight shots of tequila. Patrick, Billy's brother, arrived at the party around 8:30 p.m., and between then and 12:00 midnight, he consumed five or six shots of peppermint schnapps.

During the time of the party, there had been several fights and disturbances in the surrounding area. In one instance, a male wearing a red hooded sweatshirt threw rocks into the volunteer fire station located across the street from Billy's house. A fireman who was hit with a rock caught and pinned the man in the red sweatshirt

to the ground. The Wilsons intervened and told the firefighters that they would keep the man and the other partygoers in Billy's backyard. In another incident, around 11:00 p.m., the girlfriend of Carl Wilson, Jr. ("Carl"), the Wilsons' younger brother, was hit in the back of the head with an ear of corn by a juvenile. In retaliation, Carl hit the juvenile and "thumped him pretty good." *Appellants' App.* at 175.

Cass County Sheriff's deputies had been called to Billy's house around 9:30 or 10:00 p.m. because children had been throwing tomatoes at a woman's car. When they arrived, they told Billy to have some of his guests move their parked cars. Initially, Billy took offense to this, but eventually complied with the officers' request. Around midnight, Deputy Craven was dispatched to investigate the report that Carl had punched a juvenile in the head. Deputy Craven, who was wearing his full uniform and driving a marked Cass County Sheriff's Department patrol car, had been instructed to bring Carl into custody.

As Deputy Craven was arresting Carl, the Wilsons approached him and began demanding to know why Carl was being taken into custody. Although they knew of the earlier fight, the Wilsons did not think that the arrest was fair. Both of the Wilsons were visibly intoxicated at that time, and the officers told them to stop and not to approach any further. After arresting Carl, Deputy Craven was informed that there was a search going on for an individual wearing a red shirt who had been involved in an incident earlier in the night. He returned to Billy's backyard, where about fifteen people were gathered, including a man wearing a reddish shirt.

According to Deputy Craven, as he began to talk to this man, Billy approached and started yelling at the deputy, telling him not to question the man and to "get the hell away." *Id.* at 169. Deputy Craven told Billy to get back, to which Billy replied, "No." *Id.* at 170. Billy then raised his fist at the deputy and told him he would "kick his ass." *Id.* Deputy Craven ordered Billy to back up and put his hands behind his back several times, and Billy refused to do so. At this time, Patrick approached Deputy Craven from behind and grabbed him on the left shoulder. Deputy Craven told Patrick to get his hands off of the deputy and to back away from him. Patrick refused, and told the deputy to "get out of here." *Id.* Deputy Craven ordered Patrick to place his hands behind his back. Patrick continued to stand with his hands straight out to his side and yelling at the deputy. At this time, Billy, using an aggressive tone, asked Deputy Craven, "why he was being such an ass." *Id.* at 176. Patrick failed to follow the deputy's orders, so Deputy Craven drew his Taser, pointed it at Patrick, and warned him three times to put his arms down and place his hands behind his neck or the deputy would use the Taser on Patrick. Patrick refused to comply with Deputy Craven's demands. Deputy Craven then deployed his Taser, and Patrick immediately fell to the ground. After Patrick became compliant, Deputy Craven handcuffed him and put him into a police car. Billy was also handcuffed and placed in another police car. The Wilsons were both arrested and transported to the Cass County Jail.

The Wilsons recount a different series of events. According to them, when Deputy Craven reentered Billy's backyard to search for the man in the red shirt, he began questioning one of their guests. When Patrick heard this, he knew the identity of the man in the red shirt, so he

walked up to Deputy Craven and tapped him on the left shoulder. As Patrick stepped around Deputy Craven to tell him this information, the deputy pulled out his Taser and pointed it directly at Patrick. Patrick believed that the Taser was a handgun being pointed at him, and he raised his hands while backing away. Deputy Craven ordered Patrick to keep his hands up and then to put his hands down. Not knowing which command to obey, Patrick asked the deputy, "Do you want them up or down." *Id.* at 177. Immediately after this question, Deputy Craven shot Patrick with the Taser, which sent Patrick falling backward and caused him to hit his head on a grill and then the concrete patio. Deputy Craven ordered Patrick, who was on the ground with the barbs from the Taser still attached to him, to roll over. Patrick replied that he could not roll over. Deputy Craven again ordered Patrick to roll over or he would be shot again with the Taser. Patrick was physically unable to comply with this request, and the deputy again deployed his Taser. Deputy Craven repeated the command to roll over a third time and again shot Patrick with the Taser until another officer approached and told Deputy Craven, "that's enough." *Id.* at 186. Patrick was then handcuffed and placed in a patrol car.

On August 30, 2007, the Wilsons filed a complaint against the Sheriff, alleging that they had suffered injuries as a result of Deputy Craven's use of excessive force in arresting them. The Wilsons contended that Deputy Craven was liable both individually and in his capacity as a sheriff's deputy. The Sheriff filed a motion for summary judgment, claiming immunity from liability under the ITCA and that any claims against Deputy Craven individually were barred. After a hearing on this mo-

tion, the trial court granted the motion for summary judgment and entered final judgment in favor of the Sheriff. The Wilsons now appeal.

## DISCUSSION AND DECISION

### I. Standard of Review

When reviewing a grant or denial of summary judgment, we apply the same standard as the trial court. *Jacobs v. Hilliard,* 829 N.E.2d 629, 632 (Ind.Ct.App. 2005), *trans. denied.* We construe all facts and reasonable inferences to be drawn from those facts in favor of the nonmoving party. *Id.* Summary judgment is only appropriate when the designated evidence shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C); *Id.* The purpose of summary judgment is to terminate litigation about which there can be no material factual dispute and which can be resolved as a matter of law. *Miller v. City of Anderson,* 777 N.E.2d 1100, 1103 (Ind.Ct. App.2002), *trans. denied* (2003). The trial court's order granting a motion for summary judgment is cloaked with a presumption of validity, and the party appealing from a summary judgment decision has the burden of persuading the court that the grant or denial of summary judgment was erroneous. *Am. Home Assurance Co. v. Allen,* 814 N.E.2d 662, 666 (Ind.Ct.App. 2004), *trans. dismissed* (2005).

### II. Immunity under Indiana Code Section 34–13–3–3(8)

 Governmental immunity from suit is regulated by the ITCA. *Minks v. Pina,* 709 N.E.2d 379, 382 (Ind.Ct.App. 1999) (citing Ind.Code § 34–13–3–3), *trans. denied* (2000). "Governmental entities are subject to liability for torts committed by

their agencies or employees unless one of the immunity provisions of the [ITCA] applies." *Id.* Whether a governmental entity is immune from liability under the ITCA is a question of law for the courts, but may, at times, require factual development. *Miller,* 777 N.E.2d at 1103. We therefore review claims of governmental immunity *de novo. Id.* We owe the trial court no deference and will substitute our judgment for that of the trial court if necessary. *Id.*

The relevant portion of the ITCA states:

A governmental entity or an employee acting within the scope of the employee's employment is not liable if a loss results from the following:

(8) The adoption and enforcement of or failure to adopt or enforce a law (including rules and regulations), unless the act of enforcement constitutes false arrest or false imprisonment.

Ind.Code § 34–13–3–3(8).

The Wilsons argue that the trial court erred when it granted summary judgment in favor of the Sheriff. They contend that the trial court erred when it determined that the Sheriff was immune from liability under the ITCA. The Wilsons claim that, because Deputy Craven used unreasonable and excessive force in arresting them, his conduct should not be immune and the Sheriff may be found liable for their resulting injuries. Therefore, the issue is whether the ITCA law enforcement immunity provision applies to claims for injuries resulting from the use of excessive force during a detention or arrest.

The current state of Indiana law on this issue is subject to some disagreement and confusion. In *Quakenbush v. Lackey,* 622 N.E.2d 1284 (Ind.1993), our Supreme

Court held that section 3(8) of ITCA conferred immunity to law enforcement officials for breaches of public duties owed to the public at large, but did not shelter officers who breached private duties owed to individuals. *Id.* at 1290–91. On the same day that *Quakenbush* was decided, the Supreme Court applied the public duty/private duty test to an excessive force claim in *Kemezy v. Peters,* 622 N.E.2d 1296 (Ind.1993) and found that law enforcement officers owed a private duty to refrain from using excessive force when making arrests and that "the use of excessive force is not conduct immunized by Section 3[ (8) ]."[1]

Six years later, however, our Supreme Court criticized the public duty/private duty test utilized in *Quakenbush. Benton v. City of Oakland City,* 721 N.E.2d 224, 230 (Ind.1999). While *Benton* did not expressly overrule *Quakenbush,* the Supreme Court later explained that "*Benton* overruled the public/private duty test at common law." *King v. Ne. Sec., Inc.,* 790 N.E.2d 474, 482 (Ind.2003). Since *Benton,* courts have had varied interpretations as to whether the holding in *Kemezy* still remains good law. A panel of this court has concluded that "the excessive force exception to ITCA immunity announced in *Kemezy* cannot be regarded as good law to the extent that it is based on the *Quakenbush* test." *City of Anderson v. Davis,* 743 N.E.2d 359, 365 n. 4 (Ind.Ct.App.2001), *trans. denied.* Another panel of this court found that although *Kemezy* had been "called into question," the result had not changed. *O'Bannon v. City of Anderson,* 733 N.E.2d 1, 2–3 (Ind.Ct.App.2000).

 Our Supreme Court's decision in *Kemezy* is directly on point with this case,

---

**1.** Section 3(8) was section 3(7) at that time, but the language remains the same.

and the Supreme Court has not overruled it. Although our state courts have not yet spoken on the fate of *Kemezy* after *Benton,* the United States District Court for the Southern District of Indiana has held that it cannot be predicted whether the result in *Kemezy* will be overruled or if a different analysis would be used and, therefore, followed the result in *Kemezy* to find that officers were not immune from claims of excessive force under the ITCA. *Fidler v. City of Indianapolis,* 428 F.Supp.2d 857, 867 (S.D.Ind.2006). We note that federal district court decisions are not binding on state courts, but may be persuasive. *Plaza Group Props., LLC v. Spencer County Plan Comm'n,* 877 N.E.2d 877, 894 (Ind.Ct.App.2007), *trans. denied* (2008).

Finding the District Court's reasoning persuasive here, we conclude that the use of excessive force is not conduct immunized under section 3(8) of the ITCA. As the District Court did, we also find it instructive that our Supreme Court has not specifically overruled *Kemezy.* Therefore, consistent with the holding in *Kemezy,* police officers and the governmental entities that employ them can be found liable for excessive force claims despite the immunity coverage of the ITCA. Until our Supreme Court overrules *Kemezy,* we cannot conclude as a matter of law that the Sheriff is immune from liability for the Wilsons' excessive force claim based solely on the ITCA. The trial court erred when it granted summary judgment in favor of the Sheriff.

### III. Individual Claims Against Deputy Craven

■ The Wilsons argue that the trial court erred when it granted summary judgment in favor of the Sheriff as to the state law claims against Deputy Craven individually. They contend that Deputy Craven was acting outside the scope of his employment when he deployed his Taser, and can therefore be found liable personally for his conduct. The Wilsons also claim that, because nowhere in their complaint did they allege that Deputy Craven was acting within the scope of his employment, but only that he was acting as an agent of the Cass County Sheriff, their individual claims against Deputy Craven are not barred by Indiana Code section 34–13–3–5.

■ The ITCA limits when a plaintiff may sue a governmental employee personally. *Bushong v. Williamson,* 790 N.E.2d 467, 471 (Ind.2003). Indiana Code section 34–13–3–5(b) states in pertinent part: "[a] lawsuit alleging that an employee acted within the scope of the employee's employment bars an action by the claimant against the employee personally."

A lawsuit filed against an employee personally must allege that an act or omission of the employee that causes a loss is:

(1) criminal;

(2) clearly outside the scope of the employee's employment;

(3) malicious;

(4) willful and wanton; or

(5) calculated to benefit the employee personally.

The complaint must contain a reasonable factual basis supporting the allegations.

Ind.Code § 34–13–3–5(c). The purpose of the ITCA is to " 'ensure that public employees can exercise their independent judgment necessary to carry out their duties without threat of harassment by litigation or threats of litigation over decisions made within the scope of their em-

ployment.'" *Smith v. Ind. Dep't of Corr.,* 871 N.E.2d 975, 986 (Ind.Ct.App.2007) (quoting *Celebration Fireworks, Inc. v. Smith,* 727 N.E.2d 450, 452 (Ind.2000)), *trans. denied, cert. denied* (2008). When the employee's conduct is of the same general nature as that authorized or incidental to the conduct authorized, it is within the scope of employment. *Id.*

Here, in Count II of their complaint, the Wilsons contended that Deputy Craven's actions were "outside the scope of his employment" and therefore sought to find him personally liable. Although the complaint contained the allegation that Deputy Craven was acting outside the scope of his employment, it did not contain a reasonable factual basis supporting the allegations as required under Indiana Code section 34–13–3–5(c). The designated evidence showed that Deputy Craven's conduct was of the same general nature as that authorized, or incidental to the conduct authorized, and thus it is within the scope of employment. When Deputy Craven arrived at Billy's house, he was in full uniform and driving a marked police car. The Wilsons both stated that they knew that Deputy Craven was a police officer when he arrived. *Appellants' App.* at 175, 187. Deputy Craven arrived at Billy's home in response to a dispatch to arrest Carl for battery on a minor, and while there, Deputy Craven also conducted an investigation regarding a man in a red shirt who was involved in an incident with the volunteer fire station. Additionally, the conduct in question occurred as Deputy Craven was arresting Patrick for striking an officer. We therefore conclude that the undisputed evidence established that Deputy Craven was acting within the scope of his employment.

The Wilsons further contend that their claim in Count II was not barred because nowhere in their complaint did they allege that Deputy Craven was acting within the scope of his employment. Instead, they claim that their complaint clearly stated that Deputy Craven "acted as an agent" for the Cass County Sheriff when the conduct at issue occurred. *Appellants' App.* at 255–56. Notwithstanding their argument to the contrary, we conclude that the evidence established that Deputy Craven was acting within the scope of his employment when the conduct occurred. Because the evidence showed that Deputy Craven was acting within the scope of his employment, the Wilsons' claims against him personally are barred under Indiana Code section 34–13–3–5(b). The trial court did not err when it granted summary judgment as to the state law claims asserted against Deputy Craven personally.

We therefore affirm the trial court in its grant of summary judgment as to the state law claims against Deputy Craven individually and reverse the trial court as to its grant of summary judgment in favor of the Sheriff. We remand to the trial court for proceedings consistent with this opinion.

Affirmed in part, reversed in part, and remanded.

NAJAM, J., and BARNES, J., concur.