Connie and Dean ELLIS, Appellants–
Plaintiffs,

v.

The CITY OF MARTINSVILLE, Martinsville Fire Department, and Terry Hart, both individually and in his capacity as Assistant Chief of Martinsville Fire Department, Appellees–Defendants.

No. 55A01–1003–CT–141.

Court of Appeals of Indiana.

Jan. 11, 2011.

---

Jonathan P. Sturgill, The Sturgill Law Firm, Indianapolis, IN, Attorney for Appellants.

Douglas A. Hoffman, Carson Boxberger LLP, Bloomington, IN, Attorney for Appellees.

## OPINION

BROWN, Judge.

Connie and Dean Ellis appeal the trial court's grant of motions for summary judgment in favor of the City of Martinsville and the Martinsville Fire Department (collectively, the "MFD"), and in favor of Terry Hart, Assistant Fire Chief with the Martinsville Fire Department.[1] The Ellises raise two issues, which we consolidate and restate as whether the trial court erred in granting the motions for summary judgment. We affirm.

This case concerns a fire that broke out on April 24, 2006, in a barn located on the

---

1. Hart was sued in his capacity as an employee of the Martinsville Fire Department, as an agent of the City of Martinsville, and individually. As explained below, the trial court's first order granted summary judgment in favor of all of the parties except Hart as an individual. The second order for summary judgment, as addressed in part B, concerns the Ellises' suit against Hart as an individual, and the Ellises' suit against Hart in an official capacity is addressed in part A. For our purposes, as this opinion pertains to Hart in his official capacity as an employee of the Martinsville Fire Department and as an agent of the City of Martinsville, the abbreviation "MFD," which as noted above is also used to refer to the City of Martinsville and the Martinsville Fire Department, may be understood as encompassing these interests with respect to Hart.

Ellises' property commonly known as 1439 North Blue Bluff Road and adjacent to a "triplex" rental property commonly known as 1441, 1443, and 1445 North Blue Bluff Road, also owned by the Ellises, in Martinsville, Indiana. Appellants' Appendix at 58. The properties were "outside of the city limits for the City of Martinsville," and were "located in Washington Township for taxation purposes." [2] *Id.* Because the parties designated differing and sometimes contradictory evidence, and different designations were made as to each motion, we will recite the facts based on the designation pertaining to each summary judgment motion.

The procedural history follows. On April 10, 2008, the Ellises filed a complaint against the MFD and Hart alleging negligence. On May 21, 2008, the MFD and Hart filed a motion to dismiss pursuant to Ind. Trial Rule 12(B)(6). On June 18, 2008, the Ellises filed a response in opposition to the motion to dismiss, and on September 30, 2008, the trial court denied the motion.

On October 28, 2008, the MFD and Hart filed an answer with a request for jury trial.[3] On March 16, 2009, the MFD and Hart filed a motion for summary judgment, memorandum in support of the mo-

tion, and designation of evidence, and argued that 1) they owed no duty to the Ellises based upon the test enunciated in *Webb v. Jarvis,* 575 N.E.2d 992 (Ind.1991), *reh'g denied;* and 2) the failure to provide adequate fire protection is an exception to governmental tort liability based upon both common law governmental immunity and the Indiana Tort Claims Act ("ITCA") at Ind.Code § 34–13–3–3(7).[4] On June 1, 2009, the Ellises filed a response in opposition to defendants' motion for summary judgment and refuted both grounds cited by the MFD and Hart. On July 10, 2009, the trial court granted the summary judgment motion, but the court subsequently "held a telephonic conference clarifying its order ... advising the parties that summary judgment was not granted in favor of [Hart] and was only granted in favor of [the MFD]." *Id.* at 93. On August 18, 2009, the court certified the order for interlocutory appeal, but on October 27, 2009 this court denied the Ellises' motion.

On October 7, 2009, Hart filed a motion for summary judgment and memorandum of law in support of the motion and argued that "the acts and omissions of [Hart] occurred while he was acting in his capacity as Assistant Chief of the Martinsville Fire Department," and that "[u]nder these cir-

---

**2.** The designated evidence reveals that "[a]ny real estate parcels ending in the number '020' in Morgan County refer to [property] located in Washington Township. Properties located within the City of Martinsville have parcel numbers ending with '021.'" Appellants' Appendix at 58. The parcel number for 1439 North Blue Bluff Road, which was the Ellises' primary residence address, is 55–09–28–460–006.000–020. The designated evidence also reveals that the triplex comprised of 1441, 1443, and 1445 North Blue Bluff Road was constructed on the same land parcel as 1439 North Blue Bluff Road.

**3.** We note that the appellant's appendix does not contain a copy of the answer. We remind the Ellises that Ind. Appellate Rule 50(A)(2)

provides in part that "[t]he appellant's Appendix shall contain ... (f) pleadings and other documents from the Clerk's Record in chronological order that are necessary for resolution of the issues raised on appeal...."

**4.** We note that the appellant's appendix does not contain copies of either motion for summary judgment, instead containing only the memoranda of law in support of the motions for summary judgment. We remind the Ellises that Ind. Appellate Rule 50(A)(2) provides in part that "[t]he appellant's Appendix shall contain ... (f) pleadings and other documents from the Clerk's Record in chronological order that are necessary for resolution of the issues raised on appeal...."

cumstances, there can be no cause of action against [Hart] individually, whatsoever." *Id.* at 107. On October 14, 2009, the Ellises moved to strike Hart's motion pursuant to Ind. Trial Rule 12(F). On October 16, 2009, the court denied Hart's summary judgment motion. On October 26, 2009, Hart filed a motion to reconsider the court's ruling on his motion for summary judgment and requested a hearing, and a hearing was held on December 15, 2009. At the conclusion of the hearing, the court entered an order setting aside its order denying summary judgment and giving the Ellises until January 31, 2010 to respond to Hart's motion. The court's order also gave Hart until February 15, 2010 to respond to the Ellises' response, denied the Ellises' motion to strike, and set another hearing date for February 25, 2010.

On February 5, 2010, the Ellises filed their response in opposition to Hart's motion for summary judgment. On February 11, 2010, Hart filed a reply in further support of his motion for summary judgment and attached a case cited by the Ellises in their response, *Barnett v. Clark*, 889 N.E.2d 281 (Ind.2008). On March 1, 2010, the court granted Hart's summary judgment motion.

The issue is whether the trial court erred in granting the motions for summary judgment. When reviewing a grant of a motion for summary judgment, our standard of review is well-settled and is the same as it is for the trial court: whether there is a genuine issue of material fact, and whether the moving party is entitled to judgment as a matter of law. *Wagner v. Yates*, 912 N.E.2d 805, 808 (Ind. 2009). Summary judgment should be granted only if the evidence sanctioned by Indiana Trial Rule 56(C) shows that there is no genuine issue of material fact and the moving party deserves judgment as a matter of law. *Freidline v. Shelby Ins. Co.,* 774 N.E.2d 37, 39 (Ind.2002). Our review of a summary judgment motion is limited to those materials designated to the trial court. *Mangold ex rel. Mangold v. Ind. Dep't of Natural Res.*, 756 N.E.2d 970, 973 (Ind.2001). We must carefully review a decision on summary judgment to ensure that a party was not improperly denied its day in court. *Id.* at 974. All factual inferences must be construed in favor of the non-moving party, and all doubts as to the existence of a material issue must be resolved against the moving party. *Kovach v. Caligor Midwest*, 913 N.E.2d 193, 197 (Ind.2009), *reh'g denied.* On appeal, the trial court's order granting or denying a motion for summary judgment is cloaked with a presumption of validity. *Sizemore v. Erie Ins. Exch.*, 789 N.E.2d 1037, 1038 (Ind.Ct.App.2003). A party appealing from an order granting summary judgment has the burden of persuading the appellate tribunal that the decision was erroneous. *Id.* at 1038–1039.

Where a trial court enters findings of fact and conclusions thereon in granting a motion for summary judgment, as the trial court did in this case on both motions, the entry of specific findings and conclusions does not alter the nature of our review. *Rice v. Strunk*, 670 N.E.2d 1280, 1283 (Ind.1996). In the summary judgment context, we are not bound by the trial court's specific findings of fact and conclusions thereon. *Id.* They merely aid our review by providing us with a statement of reasons for the trial court's actions. *Id.*

"In order to prevail on a claim of negligence, a plaintiff is required to prove: (1) a duty owed by the defendant to the plaintiff; (2) a breach of that duty by the defendant; and (3) an injury to the plaintiff proximately caused by the breach." *Peters v. Forster*, 804 N.E.2d 736, 738 (Ind.2004). In negligence cases,

summary judgment is "rarely appropriate." *Rhodes v. Wright,* 805 N.E.2d 382, 387 (Ind.2004). "This is because negligence cases are particularly fact sensitive and are governed by a standard of the objective reasonable person—one best applied by a jury after hearing all of the evidence." *Id.* Nevertheless, a defendant is entitled to judgment as a matter of law when the undisputed material facts negate at least one element of the plaintiff's claim. *Id.* at 385.

Here, the Ellises argue that the trial court erred in granting summary judgment in favor of (A) the MFD; and (B) Hart in his individual capacity. We address each order separately.

### A. *The MFD's Motion for Summary Judgment*

The facts as designated by the parties reveal that the MFD responded to the Ellises' fire "in an 'assist' mode of providing mutual aid [5] to another fire department, the Washington Township Fire Department." Appellants' Appendix at 39. Hart, who was the Assistant Fire Chief, had been investigating as a member of the MFD "a house that a girl had claimed ... had been burned by her boyfriend." *Id.* at 81. He heard radio traffic regarding the Ellises' fire and responded, but he came upon the scene "very long after" other members of the MFD had arrived and were already "attempting to help put out the fire...." *Id.* at 81–82. Also, the MFD Fire Chief, Tim Fraker, was already on the scene. The MFD brought water with them in their trucks to the fire. When Hart arrived, the MFD was "spraying water towards the big rubble that was on the ground and there was an apartment building ... and they were directing water on it." *Id.* at 82.

During the incident, Tommy Ellis, the Ellises' son, witnessed Hart engage "in a heated discussion with another fireman from the Washington Township Fire Department," and at one point Tommy overheard Hart "exclaim to the Washington Township fireman, '[l]et it burn!'" *Id.* at 72. Tommy also overheard the Washington Township fireman tell Hart "that they could save the apartments in the back," and Hart responded "that it was 'their' fire." *Id.*

About forty-five minutes after the discussion, Tommy overheard Hart "order the [MFD] to pull-out and turn the fire over to the Washington Township Fire Department." *Id.* at 73. The MFD left when the fire was "[p]retty much" extinguished, and other fire departments, including "Gregg, Paragon, [and] Washington Township," were "soaking up hot spots.... Little bits of fire laying out on the ground that are needing to be put water on [sic]...." *Id.* at 82. "Since the [MFD] was an assisting agency, neither [Hart] nor any other [MFD] personnel were in the position to order and/or direct any other fire personnel at the scene." *Id.* at 40. Fire Chief Fraker's name is listed on the MFD's incident report which is an indication of the person in charge of that department who was on the scene.

In their brief, the Ellises focus their argument on the grounds that the MFD was not immune under the ITCA pursuant to the "'planning-operational' test" which is the relevant test for determining whether a government function was discretion-

---

**5.** Hart explained at his deposition that the MFD responds to a "mutual aid run" when it is "asked to respond to it by another fire department." Appellants' Appendix at 79. Hart testified that "[W]e have to be requested by some source, either a police agency or a fire agency to go. We're not allowed to leave the city of Martinsville" without such a request. *Id.*

ary under Ind.Code § 34–13–3–3(7),[6] and that the MFD "gratuitously or voluntarily" assumed a duty when it came upon the scene of the fire. Appellants' Brief at 4–5. However, the Ellises fail to make an argument regarding the MFD's claimed governmental immunity under the common law. Because we find that common law governmental immunity controls in this case, we begin our analysis there.

The MFD argues that "Indiana law is clear that governmental immunity extends to a city, a fire department, and fire department personnel for alleged failures to provide adequate fire protection, failures to maintain necessary infrastructure components (such as adequate water), and negligent and intentional conduct." Appellees' Brief at 6 (citing *O'Connell v. Town of Schererville of Lake Cnty.*, 779 N.E.2d 16 (Ind.Ct.App.2002); *Lamb v. Bloomington*, 741 N.E.2d 436 (Ind.Ct.App.2001); *Gates v. Town of Chandler, Water Dep't*, 725 N.E.2d 117 (Ind.Ct.App.2000), *trans. denied*).

In *Campbell v. State*, 259 Ind. 55, 284 N.E.2d 733 (1972), the Indiana Supreme Court, in concluding that "establishing categories of governmental immunity was best left to the legislature," took the step to abrogate "the common law doctrine of sovereign immunity in *almost* all respects." *Benton v. City of Oakland City*, 721 N.E.2d 224, 227 (Ind.1999) (discussing *Campbell*, 259 Ind. at 62–63, 284 N.E.2d at 737). However, the Court made clear that "the word 'almost' . . . is important" because "some vestige of the governmental immunity must be retained." *Id.* (quoting *Campbell*, 259 Ind. at 62–63, 284 N.E.2d at 737 (quoting W. Prosser, Law of Torts § 131, at 986 (4th ed.1971))). The Court preserved three contexts in which, "[u]n-

der common law, a governmental unit can assert sovereign immunity. . . ." *O'Connell*, 779 N.E.2d at 18–19 (discussing *Benton*, 721 N.E.2d at 227). Emphasizing that this list was not exhaustive and that "any additional exceptions would be rare and identified on a case-by-case basis," the Court put forth the following contexts in which sovereign immunity would be preserved: "(1) failure to provide adequate police protection to prevent crime; (2) appointment of an individual whose incompetent performance gives rise to a suit alleging negligence on the part of the official for making such an appointment; and, (3) judicial decision-making." *Id.* at 18–19 (citing *Benton*, 721 N.E.2d at 227). "The idea behind immunity is that, 'though the defendant might be a wrongdoer, social values of great importance require [ ] that the defendant escape liability.' " *Id.* at 19 (quoting Prosser and Keeton on Torts § 131 (W. Page Keeton et al. eds., 5th ed.1984)).

The *O'Connell, Lamb,* and *Gates* cases, cited by the MFD, have established that "[b]ecause adequate fire protection is so closely akin to adequate police protection, it should [similarly] be treated as an exception to government tort liability." *Id.* at 21. The *Lamb* case in particular examined the scope of this exception. In *Lamb*, this court examined the dismissal under Ind. Trial Rule 12(B)(6) of an eleven-count complaint filed against the City of Bloomington, John Fernandez, individually and in his official capacity as the mayor of Bloomington, Kathy Saunders, individually and in her official capacity as Bloomington's fire chief, the Bloomington Fire Department, and other defendants (collectively, the "*Lamb* Defendants"). 741 N.E.2d at 437–438. Following a fire at an apartment building, the former tenants filed a

6. We note that the Ellises cite to Ind.Code § 34–4–16.5–3(6) in their brief on this issue. However, I.C. § 34–4–16.5–3(6), which was the predecessor statute, was repealed by Pub.L. No. 1–1998, § 221.

complaint alleging the following counts: I, negligent performance of duty to respond; II, negligent performance of duty to extinguish fire; III, obstruction of firefighters' ability to act; IV, negligent instruction and/or training; V, obstruction with fire investigation; VI, negligent maintenance of equipment; VII, intentional failure to maintain equipment; VIII, negligent failure to seek mutual aid/assistance; IX, improper and/or illegal hiring of fire chief; X, negligent performance of duties as fire chief; and XI, negligent staffing procedures and numbers. *Id.* at 438.

In affirming the trial court's dismissal, this court addressed which counts were barred under the common law, which counts were barred under the ITCA, and which counts were barred by both common law and the ITCA. The *Lamb* court held that common law immunity applied to every count except for Counts III–V, which represented allegations applying to acts or omissions occurring before or after the fire itself.[7] *Id.* at 441–442. Thus, the court held that any potentially-negligent acts performed in response to the fire and fighting the fire itself were protected under the common law. *See id.* In particular, the court noted that the *Lamb* Defendants' "negligent performance of duty to extinguish [the] fire[ ] clearly [fell] within the ambit of failure to provide adequate protection" which was protected by sovereign immunity. *Id.* at 441. The court also held that common law immunity applied to the intentional failure to maintain equipment. *Id.* Finally, the court held that the "negligent failure to seek mutual aid/assistance 'from other surrounding fire departments ...' falls within the ambit of failure to provide adequate fire protection" and that therefore common law immunity applied. *Id.*

Here, the Ellises filed a three-count complaint alleging: Count I, negligence of Terry Hart, as Employee of Martinsville Fire Department, agent of the City of Martinsville, and as an individual; Count II, negligence of the Martinsville Fire Department; and Count III, negligence of the City of Martinsville. However, the Ellises in Count I allege that Hart exhibited conduct that may be deemed willful and wanton and with reckless disregard when he "instructed the MFD firefighters to 'let the barn burn,' "[8] and in "preventing the other fire departments['] attempts to put out the barn fire and/or contain the fire to its original origin," and in Counts II and III they allege that the MFD breached their duties to the Ellises through Hart as their agent. Appellants' Appendix at 3. Thus, the Ellises' allegations consist of both negligent and intentional acts which took place during the course of fighting a fire on their property.

 Willful or wanton misconduct consists of either: "1) an intentional act done with reckless disregard of the natural

---

7. Count III alleged that "before the fire, Fernandez and Saunders were informed that one of the fire trucks had 'serious defects,' yet neither remedied the 'dangerous situation,' " and that this truck "was one of the vehicles" that was sent to the fire. *Lamb,* 741 N.E.2d at 441. Count IV alleged that the City of Bloomington, the fire department, and Saunders "provided negligent instruction and/or training of the firefighters...." *Id.* Count V alleged that the responding firefighters were instructed by the *Lamb* Defendants "not to make any written entries about the fire," in order to obstruct an investigation. *Id.* We held these counts were barred by the ITCA. *Id.*

8. We note that the Ellises' complaint alleges that Hart "instructed the *MFD firefighters* to 'let the barn burn,' " but the evidence designated by the Ellises reveals that Hart "exclaim[ed] to [a] *Washington Township fireman,* 'Let it burn!' " Appellants' Appendix at 3, 72 (emphasis added).

and probable consequence of injury to a known person under the circumstances known to the actor at the time; or 2) an omission or failure to act when the actor has actual knowledge of the natural and probable consequence of injury and his opportunity to avoid the risk." *U.S. Auto Club, Inc. v. Smith*, 717 N.E.2d 919, 924 (Ind.Ct.App.1999) (citing *Witham v. Norfolk & Western Ry. Co.*, 561 N.E.2d 484, 486 (Ind.1990), *reh'g denied* ), *trans. denied.* The elements of willful or wanton misconduct are: "(1) the defendant must have knowledge of an impending danger or consciousness of a course of misconduct calculated to result in probable injury; and (2) the actor's conduct must have exhibited an indifference to the consequences of his conduct." *Id.* (citing *Witham*, 561 N.E.2d at 486). Also, "[o]ur supreme court has accepted that 'wanton and willful' and 'reckless' seem to imply the same disregard for the safety of others.'" *Bowman ex rel. Bowman v. McNary*, 853 N.E.2d 984, 995 (Ind.Ct.App.2006) (quoting *Obremski v. Henderson*, 497 N.E.2d 909, 911 (Ind.1986), *reh'g denied* ).

 We recognize that there exist potentially malicious acts that a firefighter may take during the course of fighting a fire for which the scope of common law governmental immunity for fire prevention may be tested. However, we do not believe that the evidence designated by the parties and the factual inferences, which we are obligated to construe in favor of the Ellises, establish a genuine issue of material fact in this case regarding the alleged willful and wanton misconduct. Indeed, the Ellises designated Hart's deposition in which Hart explained his version of what occurred at the fire scene. Hart's version of the events is largely unrefuted by other parts of the designated evidence.

Our review of the designated evidence under the prevailing standard reveals that Hart arrived "very long after" other members of the MFD, and the MFD had already been engaged in "attempting to help put out the fire . . . ." Appellants' Appendix at 81–82. The MFD remained on the scene until the fire was "[p]retty much" extinguished, and other fire departments, including "Gregg, Paragon, [and] Washington Township," were "soaking up hot spots. . . . Little bits of fire laying out on the ground that are needing to be put water on [sic] . . . ." *Id.* at 82. In moving for summary judgment, the MFD designated evidence that it arrived on the scene "in an 'assist' mode of providing mutual aid to the fire department in charge which was the Washington Township Fire Department." *Id.* at 39. "Since the [MFD] was an assisting agency, neither [Hart] nor any other [MFD] personnel were in the position to order and/or direct any other fire personnel at the scene." *Id.* at 40. Thus, we find that the MFD met its initial burden on summary judgment.

The only evidence designated by the Ellises to dispute that the MFD was not in control at the fire was a statement made by Hart to a member of the Washington Township Fire Department "that it was 'their' fire." *Id.* at 72. Considering all the evidence from the Ellises' point of view, we conclude that the designated evidence does not meet their responsive burden of demonstrating a genuine issue of material fact that this statement amounted to control or in any event was the proximate cause of damage to the Ellises' property. *See Scott County Family YMCA, Inc. v. Hobbs*, 817 N.E.2d 603, 605 (Ind.Ct.App.2004) (noting that "[f]rom this evidence, a trier of fact could find negligence only by engaging in prohibited inferential speculation"). Accordingly, the MFD's conduct was protected by common law government immunity pursuant to *Lamb, O'Connell,* and *Gates.*[9]

---

9. Because we decide this case pursuant to common law governmental immunity, we

Finally, to the extent that the Ellises argue that the MFD voluntarily assumed a duty, we note that because we determine that the MFD is immune to suit, we need not determine whether a duty existed. *See Benton,* 721 N.E.2d at 232 (noting that only after determining that a government defendant is not immune to liability "that a court undertakes the analysis of whether a common law duty exists under the circumstances").

### B. *Hart's Motion for Summary Judgment*

■■ The facts as designated by the parties with respect to Hart's motion reveal that the City of Martinsville and the Martinsville Fire Department responded to the Ellises' fire "in an 'assist' mode of providing mutual aid to another fire department, the Washington Township Fire Department." Appellants' Appendix at 110–111. Hart "came to the scene after other fire departments were already present and attempting to fight and/or control the fire." *Id.* at 111. Hart "heard radio traffic regarding the fire on the Ellis property. . . . At that time, [he] was in the midst of a fire investigation on another site, and already acting in the course and scope of [his] duties as a [MFD] fireman." *Id.* at 129. Hart responded to the Ellis fire "in [his] official capacity as a [MFD] fireman . . ." and was dressed in "[f]ull fire gear." *Id.* at 129, 133. Hart was paid by the MFD for his time spent at the fire. Hart was directing the MFD and the other fire departments during the fire.

During the incident, Tommy Ellis, the Ellises' son, witnessed Hart engage "in a heated discussion" with another fireman from another fire department on the scene, and at one point Tommy overheard Hart exclaim "[l]et it burn!"[10] *Id.* at 72. Tommy also overheard the fireman tell Hart "that they could save the apartments," but Hart responded "that it was 'their' fire" or that "it's not your fire. It's Martinsville's fire." *Id.* at 72, 161.

At some point, the top of the barn fell in. About forty-five minutes after the discussion between Hart and the other fireman, Tommy overheard Hart "order the [MFD] to pull-out and turn the fire over to the Washington Township Fire Department." *Id.* at 73. The barn was "still blazing" at that point. *Id.* at 162. Hart left in MFD truck number 1. After the MFD and its two trucks left, there were six trucks remaining at the scene.

The Ellises argue that "[a]n employee acts within the scope of employment when performing work assigned by the employer or engaging in a course of conduct subject to the employer's control," but that "[a]n employee's act is not within the scope of employment when it occurs within an independent course of conduct not intended by the employee to serve any purpose of the employer." Appellants' Brief at 6–7 (quoting *Barnett,* 889 N.E.2d at 284). The Ellises argue that "[i]f some of the employee's actions were authorized, the question of whether the unauthorized acts were within the scope of employment is one for the *jury.*" *Id.* at 6. The Ellises argue that "Hart's actions occurred within an independent course of conduct not intended to serve the purpose of [the MFD]." *Id.* at 7.

need not address the MFD's alternative argument that its decision was entitled to immunity under the ITCA as relating to a discretionary function.

10. In his affidavit cited to by the Ellises in response to Hart's motion for summary judg-
ment, Tommy states that Hart's interactions in question were with a Washington Township fireman, but in his deposition, parts of which were also designated, Tommy states that Hart was interacting with a member of the Green Township Fire Department.

Hart argues that the MFD admits "that Hart was acting in the course and scope of his employment at the fire scene," and that "Hart admits that any and all of his acts or omissions at the scenes [sic] were within the course and scope of his employment" with the MFD. Appellees' Brief at 8. Hart argues that, under such circumstances, Ind.Code § 34–13–3–5 commands that "there can be no cause of action against Terry Hart, individually, whatsoever." *Id.*

"The ITCA limits when a plaintiff may sue a governmental employee personally." *Wilson v. Isaacs*, 917 N.E.2d 1251, 1257 (Ind.Ct.App.2009) (citing *Bushong v. Williamson*, 790 N.E.2d 467, 471 (Ind.2003)), *summarily aff'd in part*, 929 N.E.2d 200, 204 (Ind.2010). "The purpose of the ITCA is to " 'ensure that public employees can exercise their independent judgment necessary to carry out their duties without threat of harassment by litigation or threats of litigation over decisions made within the scope of their employment.' " *Id.* at 1257–1258 (quoting *Smith v. Ind. Dep't of Corr.*, 871 N.E.2d 975, 986 (Ind.Ct.App.2007) (quoting *Celebration Fireworks, Inc. v. Smith*, 727 N.E.2d 450, 452 (Ind.2000)), *reh'g denied*, *trans. denied*, *cert. denied* 552 U.S. 1247, 128 S.Ct. 1493, 170 L.Ed.2d 304 (2008))." Ind.Code § 34–13–3–5 states in relevant part:

(a) Civil actions relating to acts taken by a board, a committee, a commission, an authority, or another instrumentality of a governmental entity may be brought only against the board, the committee, the commission, the authority, or the other instrumentality of a governmental entity. *A member of a board, a committee, a commission, an authority, or another instrumentality of a governmental entity may not be named as a party in a civil suit that concerns the acts taken by a board, a committee, a commission, an authority, or another instrumentality of a governmental entity where the member was acting within the scope of the member's employment.* For the purposes of this subsection, a member of a board, a committee, a commission, an authority, or another instrumentality of a governmental entity is acting within the scope of the member's employment *when the member acts as a member of the board, committee, commission, authority, or other instrumentality.*

(b) A judgment rendered with respect to or a settlement made by a governmental entity bars an action by the claimant against an employee, including a member of a board, a committee, a commission, an authority, or another instrumentality of a governmental entity, whose conduct gave rise to the claim resulting in that judgment or settlement. *A lawsuit alleging that an employee acted within the scope of the employee's employment bars an action by the claimant against the employee personally.* However, if the governmental entity *answers* that the employee acted outside the scope of the employee's employment, the plaintiff may amend the complaint and sue the employee personally. . . .

(c) A lawsuit filed against an employee personally must allege that an act or omission of the employee that causes a loss is:

(1) criminal;

(2) clearly outside the scope of the employee's employment;

(3) malicious;

(4) willful and wanton; or

(5) calculated to benefit the employee personally.

The complaint must contain a reasonable factual basis supporting the allegations.

(Emphasis added). Moreover, "[w]hen the employee's conduct is of the same general nature as that authorized or incidental to the conduct authorized, it is within the scope of employment." *Wilson,* 917 N.E.2d at 1258; *see also City of Gary v. Conat,* 810 N.E.2d 1112, 1118 (Ind.Ct.App. 2004) ("[A] plaintiff cannot sue a governmental employee personally if the complaint, on its face, alleges that the employee's acts leading to the claim occurred within the scope of his employment.") (citing *Bushong,* 790 N.E.2d at 471 (discussing I.C. § 34–13–3–5(b))).

Paragraph six of the complaint states that Hart "was an employee of the [MFD], a [sic] at all relevant times during the incidents alleged in this cause of action as defined under IC 34–6–2–38." Appellants' Appendix at 2. Hart cites to the answer of the MFD and Hart individually which asserts "that Hart was acting in the course and scope of his employment at the fire scene." *Id.* at 107.[11] Ind.Code § 34–6–2–38 defines "employee" as "a person presently or formerly *acting on behalf* of a governmental entity ... including members of boards, committees, commissions, authorities, and other instrumentalities of governmental entities...." (Emphasis added). Also, Count I of the complaint alleging negligence against Hart states in part:

14. The [MFD] arrived at the scene of the fire and [Hart], acting in his capacity as Assistant Fire Chief, has an affirmative duty to exercise reasonable care under the circumstances which includes, to act and exercise with reasonable skill, care,

and diligence in the performance of duties to protect life and property of the defendants.

15. [Hart], acting in his capacity as Assistant Fire Chief and as an individual, willfully and wantonly, and with reckless disregard, instructed the MFD firefighters to "let the barn burn."

16. [Hart], acting in his capacity as Assistant Fire Chief and as an individually [sic], acted outside the scope of his authority, willfully and wantonly, and with reckless disregard, by instructing the MFD firefighters to "let the barn burn."

*Id.* at 3.

As noted above, the Ellises cite to *Barnett v. Clark* which discusses the Restatement of Agency's statement that "[a]n employee's act is *not* within the scope of employment when it occurs within *an independent course of conduct* not intended by the employee *to serve any purpose of the employer.*" 889 N.E.2d at 284 (quoting Restatement (Third) of Agency, § 7.07(2) (2006)) (emphasis in original). As noted in *Barnett,* "Comment c to Section 7.07 explains that '[a]n employee may engage in conduct, part of which is within the scope of employment and part of which is not.'" *Id.* The Comment gives the example of "an employee driving a truck in the scope of employment," who "becomes irate at another motorist, leans out the truck cab, and shoots the driver whose conduct enraged him" to illustrate the principle. *Id.* The Comment explains that "[w]hile the shooting occurred in the midst of the employee's duties of employment, the shooting 'is not within the scope of employ-

---

11. Hart cites to the answer for this statement in his memorandum in support of his motion for summary judgment. However, we note that a copy of the answer is not included in the appellants' appendix. *See* Ind. Appellate Rule 50(A)(2)-(3).

ment.'" *Id.* (quoting Restatement (Third) of Agency, § 7.07 cmt. c (2006)).

The question presented to the Indiana Supreme Court in *Barnett* concerned a rape, sexual battery, and false imprisonment committed by a government employee employed as a deputy trustee and was whether the defendant Trustee, who was the government employer of the person committing the crimes, could be held vicariously liable. *Id.* at 282–283. The Court defined acts which were outside the scope of employment for vicarious liability purposes as acts done "on the employee's own initiative with no intention to perform it as part of or incident to the service for which he is employed," but also noted that "an employee's wrongful act may still fall within the scope of his employment if his purpose was, to an appreciable extent, to further his employer's business, even if the act was predominantly motivated by an intention to benefit the employee himself." *Id.* at 284 (quoting *Stropes v. Heritage House Childrens Ctr.,* 547 N.E.2d 244, 247 (Ind.1989), *reh'g denied* ).

The Court examined *Stropes,* in which the Court reversed the grant of summary judgment in favor of the defendant facility, holding that an issue of fact existed whether the employee's act of sexually assaulting "a fourteen-year-old victim of cerebral palsy with 'the mental capacity of a five-month-old infant'" while changing the child's bed linens was within the scope of employment which would in turn subject the facility to vicarious liability. *Id.* (quoting *Stropes,* 547 N.E.2d at 245). The Court in *Stropes* reasoned that because the employee's duties included feeding, bathing, and changing the bedding of the residents, the facts "could be viewed as showing that the employee acted to an appreciable extent to further his employer's business and that the actions were at least for a time authorized by the employer and

motivated by the employer's interests," and held that "these inferences could lead to the conclusion that the 'wrongful acts fell within the scope of his employment and [the Employer] should be accountable.'" *Id.* at 285 (quoting *Stropes,* 547 N.E.2d at 250).

Applying the facts and reasoning of *Stropes,* the Court in *Barnett* examined the facts which included that the plaintiff "had sought public assistance from her local trustee's office," and the employee, a deputy trustee, took the plaintiff into a back room of the office, closed the door, blocked it with a chair, turned off the lights, and sexually assaulted the plaintiff. *Id.* at 283. The Court held "that the injurious actions of the deputy trustee were not sufficiently associated with his employment duties so as to fall within the scope of the deputy's employment by the defendant Trustee," and that "[t]he nature of the deputy trustee's duties and authority differs vastly from the employee in *Stropes.*" *Id.* at 286.

Here, it is clear that any alleged misconduct on the part of Hart is closer to *Stropes* than to *Barnett.* Viewing the alleged conduct by Hart in the light most favorable to the Ellises, we find that Hart came upon the scene dressed as a fireman. He had been acting in his capacity as a fireman previously at another scene before being directed to the Ellises' property. During the fire, Hart exclaimed to another fireman to "[l]et [the barn] burn!" Appellants' Appendix at 72. Hart also told the fireman, after the other fireman said that the apartments could be saved, that "it was 'their' fire" or that "it's not your fire. It's Martinsville's fire." *Id.* at 72, 161. At one point, while the barn was "still blazing," Hart ordered the Martinsville Fire Department to leave the scene and turned the fire over to the Washington Township Fire Department. *Id.* at 162. After the

Martinsville Fire Department left, there were six trucks remaining at the scene.

Based upon our review of the record, we conclude that Hart at all times was acting as a member of the MFD, and his conduct was at least incidental to conduct authorized in that capacity. *Wilson,* 917 N.E.2d at 1258. Thus, Hart's actions were within the scope of his employment. Accordingly, because the Ellises' complaint brought suit against the City of Martinsville and the Martinsville Fire Department, the ITCA barred an action against Hart as an individual, and the trial court did not err in granting summary judgment in favor of Hart.[12] *City of Gary,* 810 N.E.2d at 1118 (holding that plaintiff's complaint conceded that government employee was acting within the scope of his employment which barred an action against employee in his individual capacity).

For the foregoing reasons, we affirm the trial court's grant of summary judgment in favor of the MFD and Hart as an individual.

Affirmed.

ROBB, C.J., and RILEY, J., concur.

---

12. As noted above, had the City of Martinsville and the Martinsville Fire Department answered that Hart had acted outside the scope of his authority, the ITCA would have allowed the Ellises leave to amend their complaint against Hart in his individual capacity. Ind.Code § 34–13–3–5(b).