CITY OF PERU, Peru Fire Department and City of Peru Central Communications System, Appellants–Defendants,

v.

Matthew LEWIS and Tracy Lewis, Individually and as parents and natural Guardians of Virginia Lewis, a Deceased minor child, James Lewis, a minor, and Grace Lewis, a minor, Appellees–Plaintiffs.

No. 85A04–1010–CT–611.

Court of Appeals of Indiana.

March 14, 2011.

Publication Ordered May 17, 2011.

Transfer Denied Aug. 18, 2011.

James S. Stephenson, Stephenson Morow & Semler, Indianapolis, IN, Attorney for Appellants.

W. Scott Montross, Montross Miller Muller Mendelson & Kennedy, Indianapolis, IN, Attorney for Appellees.

## OPINION

BAKER, Judge.

Appellants-defendants City of Peru (Peru), the Peru Fire Department (Fire Department), and the City of Peru Central Communications System (Central Communications System) (collectively, the City Defendants) bring this interlocutory appeal, challenging the trial court's denial of their motion for summary judgment regarding the negligence action that was brought against them by appellees-plaintiffs Matthew and Tracy Lewis, individually and as parents of their deceased child, Virginia, and their two surviving children, James and Grace (collectively, the Lewises).

The City Defendants argue that they are entitled to a judgment as a matter of law because the doctrine of governmental immunity defeats the Lewises' claims of negligence on the part of a city fire department in fighting a fire and rescuing the fire victims. Concluding that the doctrine of governmental immunity bars the Lewises' claims, we reverse the judgment of the trial court and remand with instructions that summary judgment be entered in favor of the City Defendants.

## FACTS

In January 2002, Peru's Board of Public Works and Safety entered into an agreement with the Miami County Board of Commissioners, regarding the implementation of a central communications center. The agreement provided that a single communications center would dispatch city police, and fire services, county deputies, township fire departments, and emergency medical services in response to 911 calls at a dispatch center. The interlocal agreement established a joint board known as the Peru/Miami County Central Communications Executive Board, as well as a single communications operations committee. The Central Communications Executive Board would in turn recommend a 911 communications director to be appointed by the Miami County Commissioners.

On May 28, 2002, Miami County entered into an enhanced 911 service agreement to establish its communications system with Business Communication Services, a division of SBC Global Services, Inc. That agreement superseded other 911 agreements between Miami County and Ameritech, and was in force and effect on March 11, 2004. Ameritech provided enhanced 911 service to Miami County through its public safety answering point, Miami County Central Dispatch.

On March 11, 2004, Tracy discovered a fire in the first floor living room of her home. At approximately 6:20 p.m., Tracy dialed 911, reported the fire, and told the operator that she and her children were on the second floor. Tracy also told the dispatcher that she and the children would attempt to leave the residence.

The dispatcher radioed the Fire Department and advised that Tracy and her children were upstairs and that they would try and leave the residence. Thereafter, the 911 dispatcher again radioed the Fire Department and advised that witnesses could see flames and that it was "unknown if occupants are still inside or outside" the house. Appellants' App. p. 56–57, 61, 64.

Several firefighters responded and arrived at the Lewises' residence at approximately 6:22 p.m. Although some of the initial responders heard dispatch reports that people might still be in the house, others were informed that those individuals were attempting to leave.

Donald Myers and Mark Boyer were the first firefighters to enter the house and began to extinguish the fire in the living room. The fire was rolling up to the ceiling, and it took Myers and Boyer approximately five minutes to suppress. Two other firemen maintained positions outside the front door and kept the hose line straight and free of kinks.

Captain Joseph Lester remained outside and spoke to one of the Lewises' neighbors as to whether anyone was still inside. Because the neighbor was not sure, Captain Lester assumed that the house was still occupied. Captain Lester directed firefighter Brian Edwards to the house to create a vent and allow heat and smoke to escape. Firefighter Robert Daine started a fan on the front porch to push air into the house and clear the smoke.

At some point, a second fire truck arrived. Captain Lester instructed those firefighters to connect to a fire hydrant that was less than a block from the house. Thereafter, Captain Lester told firefighter Chris Wolfe to hose down the upper level of the exterior of the house. Daine and Edwards then took a second hose and went upstairs. Edwards sought to search for fire that may have extended from the first floor to the second floor and to search for occupants. There was a smoky haze upstairs with visibility of approximately two feet.

After noticing a dog at the top of the stairs, Daine instructed Edwards to carry it downstairs. When Edwards walked downstairs, Daine continued searching the hallway. Daine and another firefighter, Garry Davenport, saw Grace lying in the hallway. As Davenport carried Grace down the stairs, Daine went to the base of the stairwell and yelled for additional help. Davenport also radioed for assistance after handing Grace to Captain Lester. Two of the firefighters found Tracy in the master bedroom with Virginia lying beneath her. They were taken downstairs and Edwards ran back up the stairs and saw James in one of the other bedrooms. Virginia died as a result of the injuries she sustained in the fire.

On December 22, 2005, the Lewises filed a complaint against the City Defendants, the Board of Commissioners of Miami County (Board), and the Miami County Council (Council). The Lewises alleged that the firefighters failed to follow appropriate departmental procedures and did not search the Lewises' home in a timely manner to determine whether anyone was inside. The Lewises claimed that all of the defendants were responsible for Virginia's death from the injuries that she sustained in the fire. The Lewises further asserted that the defendants were liable for the serious and permanent injuries that Tracy and the other children suffered in the fire. Tracy and the children have all incurred substantial medical expenses as a result of the fire. Matthew also advanced a claim for loss of consortium.

On February 5, 2007, the trial court entered an agreed summary judgment order in favor of the Board and Council. On December 23, 2009, the City Defendants filed a motion for summary judgment, on the grounds that the Lewises' claims were "barred by common law immunity, which bars liability of governmental entities for negligent firefighting or rescue." Appellants' App. p. 24. In the alternative, the City Defendants alleged that the City owed no duty to provide adequate firefighting or rescue services, the Fire Department was not a proper party-defendant, and the City cannot be liable for any failure to communicate by county central dispatch, and there is no entity known as the "City of Peru Communications System." *Id.* at 25.

Following argument on the motion on March 8, 2010, the trial court denied the City Defendants' motion for summary judgment. After the trial court certified the order denying the motion for summary judgment for immediate appeal, we accepted jurisdiction for interlocutory appeal. The City Defendants then timely filed a timely Notice of Appeal.

## DISCUSSION AND DECISION

### I. Standard of Review

We review an appeal from summary judgment de novo. *Bules v. Marshall County,* 920 N.E.2d 247, 250 (Ind.2010). Summary judgment is proper when there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Indiana Trial Rule 56(C). All facts established by the designated evidence and inferences therefrom are to be construed in favor of the non-moving party. *Dreaded, Inc. v. St. Paul Guardian Ins. Co.,* 904 N.E.2d 1267, 1270 (Ind.2009). The trial court's order granting or denying a motion for summary judgment is cloaked with a presumption of validity. *Ellis v. Martinsville,* 940 N.E.2d 1197, 1201 (Ind.Ct.App.2011). The party appealing from a summary judgment order has the burden of persuading us that the decision was erroneous. *Id.*

### II. The City Defendants' Claims

### A. Peru Central Communications System and the Peru Fire Department

 At the outset, we note that the Lewises sued Peru *and* its Fire Department. In accordance with Indiana Code section 34–6–2–110, the definition of a political subdivision includes a city but not a division or department of a city. The "department" of a city is merely a vehicle through which government·fulfills its policy functions and is not a governmental entity unto itself. *Slay v. Marion Cty. Sheriffs Dept.,* 603 N.E.2d 877, 887 (Ind. Ct.App.1997). And a non-existent entity cannot be sued or brought into court by summons or otherwise. *Rich v. Fidelity Trust Co. of Indianapolis* 137 Ind.App. 619, 632, 207 N.E.2d 850, 858 (1965). As a result, the trial court should have dismissed the Fire Department—in its individual capacity—from the action.

 The Lewises also sued Peru's Central Communications System. However, as discussed above, central dispatch services in Miami County are provided through the Miami County Communications Center, a county agency. Thus, even if dispatchers were city employees, and not agents of Miami County, the city would still be immune from liability for enhanced 911 operations. Ind.Code § 34–13–3–3(19); *see also Barnes v. Antich,* 700 N.E.2d 262, 265 (Ind.Ct.App.1998) (observing that the operation of an emergency dispatch system constitutes a governmental function entitled to immunity from tort liability). As a result, the trial court should also have dismissed the Central Communications System as a party defendant or considered it as another agency of the City for purposes of common law immunity in this instance.

### B. Peru's Contentions

Because we have concluded that the trial court should have dismissed the Fire Department and Central Communication System from this action and/or granted summary judgment in their favor, we now address the remaining issue that is before us: whether Peru is entitled to governmental immunity in this instance. Peru maintains that the trial court should have granted its motion for summary judgment because the doctrine of common law immunity bars liability that is based on the

failure of a city's firefighters to adequately protect and rescue citizens from the fire.

In *Campbell v. State*, 259 Ind. 55, 284 N.E.2d 733 (1972), our Supreme Court, in concluding that "establishing categories of governmental immunity was best left to the legislature," took the step to abrogate "the common law doctrine of sovereign immunity in almost all respects." *Benton v. City of Oakland City*, 721 N.E.2d 224, 227 (Ind.1999) (discussing *Campbell*, 259 Ind. at 62–63, 284 N.E.2d at 737). However, the Court made clear that "the word 'almost' . . . is important" because "some vestige of the governmental immunity must be retained." *Id.* (quoting *Campbell*, 259 Ind. at 62–63, 284 N.E.2d at 737 (quoting W. Prosser, Law of Torts § 131, at 986 (4th ed.1971))). The Court preserved three contexts in which, "[u]nder common law, a governmental unit can assert sovereign immunity. . . ." *O'Connell v. Town of Schererville*, 779 N.E.2d 16, 18–19 (Ind. App.2002) (discussing *Benton*, 721 N.E.2d at 227). Emphasizing that this list was not exhaustive and that "any additional exceptions would be rare and identified on a case-by-case basis," the Court put forth the following contexts in which sovereign immunity would be preserved: "(1) failure to provide adequate police protection to prevent crime; (2) appointment of an individual whose incompetent performance give rise to a suit alleging negligence on the part of the official for making such an appointment; and, (3) judicial decision-making." *Id.* at 18–19 (citing *Benton*, 721 N.E.2d at 227). "The idea behind immunity is that, 'though the defendant might be a wrongdoer, social values of great importance require [ ] that the defendant escape liability.'" *Id.* at 19 (quoting Prosser and Keeton on Torts § 131 (W. Page Keeton et al. eds., 5th ed.1984)).

In *Gates v. Town of Chandler*, 725 N.E.2d 117 (Ind.Ct.App.2000), we recognized that common law immunity was necessary with regard to negligence claims involving fire protection:

> [A]dequate fire protection is so closely akin to adequate police protection that fire protection should be treated as an exception to governmental tort liability under *Campbell*. Both services are essential for public safety, which is the primary function of government. Both are required to sustain a well-ordered society that values and protects the lives and property of its citizens. . . . Police and fire protection rank together in the essential nature of the services provided. . . . Government provides fire protection as an essential public service because fire, like crime, is a common enemy.

*Id.* at 119. The *Gates* court concluded that

> Essentially, we affirm the long-recognized common law rule that a municipality is not liable to an owner of property destroyed by fire even though the destruction may have resulted from the failure to provide suitable equipment or an adequate supply of water with which to fight the fire. . . . Nor is a municipality subject to liability for negligently failing to timely provide an adequate number of firefighters who are competent to fight the fire and fit for duty.

*Id.*

Also instructive is our decision in *Lamb v. City of Bloomington*, 741 N.E.2d 436 (Ind.Ct.App.2001), where the plaintiffs alleged that the Bloomington Fire Department was negligent in fighting a fire that caused a fatality and destroyed several apartments that resulted in other property damage and losses. The plaintiff claimed, among other things, that the fire department negligently performed its duty in responding to the fire and extinguishing it. *Id.* at 438.

The trial court dismissed the complaint, and on appeal, we determined that common law immunity applied to any potentially-negligent acts performed in response to the fire and fighting the fire itself were protected under the common law. *Id.* at 441–42. In particular, we held that the defendants' "negligent performance of duty to extinguish [the] fire[ ] clearly [fell] within the ambit of failure to provide adequate protection." *Id.* at 441. Thus, the defendants were entitled to common law immunity.

Finally, most recently in *Ellis,* we affirmed the trial court's grant of summary judgment in favor of Martinsville and its fire department on the grounds of common law governmental immunity. The designated evidence established that the fire department remained on the scene of the fire until it was "pretty much extinguished," other fire departments were on the scene, and the defendant fire department was providing mutual aid to the fire department that was actually in control. Op. 940 N.E.2d at 1205–06. Thus, it was determined that the fire department did not engage in willful or wanton misconduct in providing fire assistance to another fire department that would preclude application of common law governmental immunity in the property owners' negligence action. *Id.*

When examining the various circumstances that were presented in these cases, we acknowledge that there is virtually no limit to the types of claims that citizens might advance concerning municipal inadequacies in providing adequate fire protection, such as adequate staffing, inadequate training, etc. As discussed above, the Lewises contend that the fire department was negligent in supplying fire protection without making a search for fire victims a priority; by favoring ventilation of the house instead of searching for vic-

tims; and by not communicating to firefighters that people might be in the house, which communication might have caused them to make potential rescue a more urgent priority once the first floor fire was under control. In our view, these allegations—however characterized—fall within the ambit of the failure to provide adequate fire protection and are subject to common law immunity in accordance with *Lamb* and *Gates,* both of which draw upon our Supreme Court's holding in *Benton* that concerns municipal services closely akin to the failure to prove police protection.

Although we are sympathetic to the Lewises' plight in light of this terrible tragedy, we are compelled to conclude that the doctrine of common law immunity bars their claims against the City Defendants. Thus, the trial court erred in.denying the City Defendants' motion for summary judgment and we remand this case with instructions that the trial court enter summary judgment in favor of the City Defendants.

The judgment of the trial court is reversed and remanded.

VAIDIK, J., and BARNES, J., concur.

## ORDER

Appellee's, by counsel, have filed a Motion To Publish Memorandum Opinion. The Appellant's, by counsel, have filed a Response To Motion To Publish Memorandum Opinion. Having reviewed the matter, The Court FINDS AND ORDERS AS FOLLOWS:

1. Appellee's Motion To Publish is GRANTED, and, this Court's opinion handed down in this cause on March 14, 2011, marked Memorandum Decision, Not

for Publication, is now ORDERED PUB-LISHED.

BAKER, VAIDIK, BARNES, JJ., concur.