**James DEATON and Lisa Deaton, Appellants–Plaintiffs,**

v.

**Justin ROBISON and Knight Rifles, Inc., Appellees–Defendants.**

**No. 36A04–0702–CV–102.**

Court of Appeals of Indiana.

Dec. 31, 2007.

David W. Stone IV, Stone Law Office & Legal Research, Anderson, IN, Attorney for Appellants.

Donald L. Dawson, John B. Drummy, Mark D. Gerth, Kightlinger & Gray, L.L.P., Indianapolis, IN, Attorneys for Appellees.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

James Deaton ("Deaton") and Lisa Deaton (collectively "the Deatons") appeal from the trial court's judgment in favor of Knight Rifles, Inc. ("Knight") on the Deatons' complaint alleging negligence. The Deatons present the following issues for our review:

1. Whether the trial court erred when it entered judgment on the evidence on the issue of inadequate warnings.

2. Whether the trial court abused its discretion when it excluded from evidence an owner's manual and instructional video associated with Knight's product.

We affirm.

### FACTS AND PROCEDURAL HISTORY

Justin Robison owned a black powder rifle, model MK–95, manufactured by Knight. On December 1, 2002, Robison and Deaton were in Robison's garage preparing to go deer hunting when Robison realized that he had left his rifle loaded from the previous day's hunt. Acknowledging the danger posed by transporting a loaded rifle, Robison said to Deaton, "I've got to unload this before I kill somebody." Appellee's App. at 3. Robison tried to pull the spring-loaded bolt back to unload the rifle when the bolt slipped and struck the primer, causing the rifle to fire. The rifle was aimed at Deaton, and he sustained a shot to his leg. Robison's rifle was equipped with two safeties. Only one safety, the trigger safety, was engaged at the time of the shooting. The rifle would not have fired at all had both safeties been engaged.

The Deatons filed a complaint alleging that Robison was negligent in shooting Deaton and that Knight was negligent in failing to adequately warn of the dangers associated with the MK–95. During trial, Knight moved for judgment on the evidence on the issue of inadequate warnings, which the trial court granted. In addition, the trial court sustained Knight's objection to the admission into evidence of a manual and instructional video associated with Robison's rifle. At the conclusion of trial, the jury found Robison 100% at fault in causing Deaton's injuries and awarded damages to the Deatons in the amount of $1,025,000. This appeal ensued.

## DISCUSSION AND DECISION

### Issue One: Judgment on the Evidence

The Deatons first contend that the trial court erred when it entered judgment on the evidence in favor of Knight on the issue of inadequate warnings associated with the MK–95. Our standard of review is well settled:

> When reviewing the trial court's [ruling on] a motion for judgment on the evidence, we will consider only the evidence most favorable to the nonmovant along with all reasonable inferences to be drawn therefrom. We must determine whether there was evidence of probative value supporting each element which would justify submission of the claim to the jury. If there is any probative evidence or reasonable inference to be drawn from the evidence or if reasonable people would differ as to the result, judgment on the evidence is properly denied. A motion for judgment on the evidence should be granted only in those cases where the evidence is not conflicting and susceptible to one inference, supporting judgment for the movant.

Thus, our role on review is no different from that of the trial court. *Lumbermens*

*Mut. Cas. Co. v. Combs,* 873 N.E.2d 692, 712–13 (Ind.Ct.App.2007) (quoting *CSX Transp., Inc. v. Kirby,* 687 N.E.2d 611, 615–16 (Ind.Ct.App.1997)).

■ This case falls within the provisions of the Indiana Products Liability Act ("the Act"). Under the Act, a plaintiff must prove that: (1) the product was defective and unreasonably dangerous; (2) the defective condition existed at the time the product left the defendant's control; and (3) the defective condition was the proximate cause of the plaintiff's injuries. *Coffman v. PSI Energy, Inc.,* 815 N.E.2d 522, 527 (Ind.Ct.App.2004), *trans. denied.* A product may be defective because of a failure to warn of the dangers inherent in the product's use, and a duty to warn consists of two duties: (1) to provide adequate instructions for safe use; and (2) to provide a warning as to dangers inherent in improper use. *Id.* "Unreasonably dangerous," for purposes of the Act, refers to any situation in which the use of a product exposes the user or consumer to a risk of physical harm to an extent beyond that contemplated by the ordinary consumer who purchases the product with the ordinary knowledge about the product's characteristics common to the community of consumers. Ind.Code § 34–6–2–146.

Our Supreme Court has adopted Section 388 of the Restatement (Second) of Torts, which provides, in relevant part:

> One who supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier

(a) knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and

(b) *has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and*

(c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous.

(Emphasis added).

At the close of the Deatons' case at trial, Knight moved for judgment on the evidence, asserting in relevant part as follows:

Then there's also an allegation that there were inadequate warnings. Well the case law holds that the same thing is true in the warning case as whether it's design, inadequate instruction, or lack of warning. It still must ·be shown to be unreasonably dangerous. The, let's examine the evidence a little bit in that regard. The manual has been testified [sic], albeit not admitted into evidence, and Mr. Martin has given opinions about the inadequacy of the warnings and one of them was that they gave two opinions. One that the manual was inadequate because it failed to warn the user not to let the firing pin rest against a live primer. The second was it didn't tell you, I believe, it didn't tell you how to unload the rifle. Well that's irrelevant because this isn't a case ... about Mr. Robison not knowing and appreciating how to unload the rifle. He used it for years. He also testified that "now you were of course aware that if it slipped when you were pulling it back without the safety, there was a risk of it firing. Correct? Yeah, yeah there's always a risk." So what do we have? We have Mr. Robison knowing how to unload it.

He'd done it all that time. He knows of the risks of, that if he pulled it back and let it go, it would fire. The question of him not being warned of this ... there is no need to warn someone as a legal proposition, there's no need to warn someone if they already know about it. A warning would be superfluous or meaningless. He was asked, again I quote from his deposition, "now the secondary safety mechanism as you indicated a moment ago [sic]. Do you have the firing pin resting against the live primer, like it was at the time of Mr. Deaton's accident? The secondary safety could have been just turned and that clockwise and backed it off just a little bit and then pulled it and everything would have been fine. This accident wouldn't have happened. Isn't that true?" He says that if the secondary safety was engaged this accident would not have happened.... "Would you agree with me that to keep the primer on with the rifle loaded and its projectile cap in place, the jacket on and the hammer resting on it, that's a dangerous way to have the firearm when you're not actually out on the hunt?" And I'm quoting from his deposition when I was cross-examining him. "And your answer to that was yes I would agree. That's the ·same, and he goes on to say, yes I would agree. That's the same as leaving a shotgun loaded in your house."

Transcript at 432–34.

At trial, Robison testified in relevant part as follows:

Q: Okay. Now, the secondary safety mechanism, as you indicated a moment ago, if you had the firing pin resting against the live primer like it was at the time of Mr. Deaton's accident, the secondary safety, [sic] you could have just turned that clockwise and backed that off just a little bit and then pulled it and

everything would have been fine. This accident wouldn't have happened. Isn't that true?

A: If the secondary safety was engaged this accident would not have happened.

Q: Alright. Now, you were, of course, aware that if it slipped when you were pulling it back without the secondary safety, there was a risk of it firing, correct?

A: Yeah, I ... I ... there's always a risk.

\* \* \*

Q: Yeah. Would you agree with me that *to have a loaded firearm in the condition that you had it in when you took it out of your case seconds before Mr. Deaton was shot, that that's a dangerous thing to do?*

A: It's ... *yes.* I do.

Q: And you'd agree with me that trying to remove the primer cap like you were trying to do there without the secondary safety on, while that rifle is pointed at someone, is a very dangerous thing to do?

A: Yes.

\* \* \*

Q: Okay. And then you left the field and got in the vehicle and came back and you took your rifle and when you left the field, it was the firing pin resting against the live primer and you took that and got into a motor vehicle with that?

A: I cased the weapon, yes.

Q: Pardon me. And you neglected to unload or remove the firing cap when you got into the vehicle, is that right?

A: Yes.

Q: And that's a dangerous practice, is it not?

A: Yes.

\* \* \*

Q: Throughout the time you have the MK–95 ... you fully appreciate how the secondary safety and the trigger safety operate?

A: Fully appreciate it as in knowing the purpose as to what they did on the gun? Yes.

Transcript at 168–73 (emphases added).

■ On appeal, the Deatons contend that the dangerous condition at issue is that the rifle could fire even with one of the safeties engaged. They assert that there is no evidence that Robison appreciated the specific danger that the gun could fire with the trigger safety engaged. Thus, the Deatons maintain that Knight is liable because it failed to warn Robison of that danger. But the evidence shows that Robison fully appreciated the danger of unloading the gun in the presence of others and that he knew engaging the secondary safety would have prevented the shooting. It is undisputed that Robison appreciated the danger inherent in handling a loaded rifle and in unloading a rifle while pointing it at someone.

If Robison thought the rifle was in a safe condition, loaded, but with the single safety engaged, he would not have been so concerned about unloading it before leaving for the hunting trip. Immediately before the shooting, Robison stated his concern that he might kill someone if he did not unload the rifle before the trip. And Robison testified that having a loaded firearm "in the condition that [he] had it in when [he] took it out of [his] case seconds before Mr. Deaton was shot [namely, with only the trigger safety engaged,]" was a "dangerous thing to do." Appellee's App. at 26. That evidence shows that Knight reasonably believed that Robison would

realize the danger of unloading the rifle while pointing it at someone, regardless of whether one or both safeties were engaged. Thus, we conclude that Knight is not liable for failure to warn. The trial court did not err when it entered judgment on the evidence on this issue.[1]

### Issue Two: Exclusion of Evidence

The Deatons also contend that the trial court abused its discretion when it excluded the instructional manual and video that came with the MK–95 rifle. But because we hold that judgment on the evidence on the issue of failure to warn was proper, the Deatons cannot show any harm by the trial court's exclusion of that evidence. As such, the Deatons' contention on this issue must fail.

Affirmed.

BAILEY, J., and CRONE, J., concur.

1. The evidence also shows that the specific warning the Deatons contend should have been given would not have been heeded. Robison testified that he did not read the manual, and he testified that he probably watched the video, but only to learn how to clean the rifle. And, as previously noted, Robison already knew it was dangerous to point a loaded weapon at someone and did it anyway.