**FOR PUBLICATION**



ATTORNEYS FOR APPELLANT:

**THOMAS E. WHEELER II**
**MAGGIE L. SMITH**
Frost Brown Todd LLC
Indianapolis, Indiana

ATTORNEY FOR APPELLEE:

**NEAL F. EGGESON, JR.**
Eggeson Appellate Services
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| WALGREEN CO., | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1311-CT-950 |
| | ) | |
| ABIGAIL E. HINCHY, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

**APPEAL FROM THE MARION SUPERIOR COURT**
The Honorable David J. Dreyer, Judge
Cause No. 49D10-1108-CT-29165

**November 14, 2014**

**OPINION—FOR PUBLICATION**

**BAKER, Judge**

In this case, a pharmacist breached one of her most sacred duties by viewing the prescription records of a customer and divulging the information she learned from those records to the client's ex-boyfriend. A jury heard extensive evidence during a four-day trial and ultimately found that the pharmacist and her employer are liable for the damages sustained by the customer as a result of the breach. We are loath to disturb jury verdicts and decline to do so in this case.

Walgreen Company raises a number of issues in this appeal. First, it argues that the trial court erred by refusing to grant summary judgment or a directed verdict in Walgreen's favor on Abigail Hinchy's claims based on respondeat superior and negligent retention and supervision of an employee. Second, Walgreen argues that Hinchy's attorney engaged in improper ex parte communication when he filed a trial brief under seal with the trial court and did not provide a copy to Walgreen. Third, Walgreen contends that the jury was improperly instructed on issues surrounding respondeat superior and the tort of public disclosure of private facts. Fourth, Walgreen argues that the $1.8 million jury verdict was excessive and based on improper factors. Finding no reversible error, we affirm.

FACTS[1]

Although the parties dispute the precise beginning and ending dates, at some point between fall 2006 and spring 2010, Hinchy was engaged in an on-and-off sexual

---

[1] We held oral argument in this case in Indianapolis on October 14, 2014. We commend counsel for both parties for their stellar oral and written advocacy.

2

relationship with Davion Peterson.   During this period, Hinchy filled all of her prescriptions, including oral birth control pills, at a Walgreen pharmacy.   At some point in 2009, Peterson began dating Walgreen pharmacist Audra Withers.   In August 2009, Hinchy became pregnant with Peterson's child.   On an unknown date, Peterson learned that he had contracted genital herpes.   Hinchy gave birth to a son on May 22, 2010.

At some point during the week of May 26, 2010, Peterson mailed a letter to Withers informing her about the baby and about the possibility that he may have exposed her to genital herpes.   Withers became terrified about the possibility of contracting a sexually transmitted disease.   Consequently, during her shift and while at work, Withers looked up Hinchy's prescription profile in the Walgreen computer system to see if she could find any information about Hinchy's sexually transmitted disease.   The next day, Withers again looked up Hinchy's profile to confirm that she had spelled it correctly the day before.   Withers has consistently maintained that she never revealed to anyone what she had learned about Hinchy's prescription profile, did not look for any information related to birth control, and did not print anything out relating to Hinchy's prescription profile.

On May 29, 2010, Peterson sent the following text message to Hinchy:

> I'm not trying to start any crap but I have a print out showing that you didn't even refill ur birth control perscription for july or august. The last time you filled ur prescription was june.  I know uve lied to ur mom and harmony and anybody willing to listen but the printout does not lie.  I know you lied to me wth tears and curse words and misplaced righteousness.   U really should think about what you did…on ur own.   You really should think about that FACT before

3

you call me another name. What kind of person does something like that?

Tr. Ex. 1A (internal spelling and grammatical errors original). In response, Hinchy sent the following text to Peterson:

> Print out. It's illegal for u to obtain any kind of information like that regarding me. And if u knew anything about my medical history u would know that I was on multiple types of birth control since I was 15[.]

Tr. Ex. 1B (internal spelling and grammatical errors original). Peterson responded with the following return text:

> Abby, you ddnt refill ANYTHING at all. No type of birth control medication at all. June you did. You did NOT in july and august. Jeez….r you really still trying to claim? Again, I'm not trying to start shit. What's done is done, but what's happening was totally avoidable. You are NOT a victim. You did something wrong abby. Very wrong. Ps….it is not illigall for ME to have it. Ime being very technical here but I ddnt break any laws myself.

Tr. Ex. 1C (internal spelling and grammatical errors original).

It was, in fact, true that Hinchy had not filled her birth control prescriptions in July or August 2009. Unable to understand how Peterson had accessed a printout containing her private prescription information, Hinchy immediately contacted her local Walgreen but was unable to reach anyone. She then called a Walgreen in her mother's hometown of Schererville and was told by the Walgreen employee at that location that there was no way to track whether her records had been accessed. With no idea how to proceed, Hinchy took no further action at that time.

4

On March 18, 2011, Peterson mailed his son a gift. The package had a return address that Hinchy did not recognize. After conducting an internet search regarding the address, she learned that the address belonged to Withers. She also learned that Peterson and Withers were married and that Withers was a pharmacist at the local Walgreen where she fills her prescriptions. Hinchy immediately contacted her local Walgreen to report her suspicion that Withers had looked at her personal records and disclosed the information she learned to an unauthorized individual.

Over the next three weeks, Hinchy was in regular contact with Walgreen's regional office and loss prevention department. When Withers was confronted about the situation, she admitted that she had accessed Hinchy's prescription profile for personal reasons. On April 15, 2011, Loss Prevention Detective Michael Bryant confirmed to Hinchy that (1) a HIPAA/privacy violation had occurred, (2) Withers had viewed Hinchy's prescription information without consent and for personal purposes, and (3) Walgreen could not confirm that Withers had revealed that information to a third party. As a result of Walgreen's investigation, Withers received a written warning and was required to retake a computer training program regarding HIPAA.

## The Litigation

On August 1, 2011, Hinchy filed a complaint against Walgreen and Withers. Against Withers, Hinchy filed claims of negligence/professional malpractice, invasion of privacy/public disclosure of private facts, and invasion of privacy/intrusion. Against Walgreen, Hinchy filed claims seeking liability for the counts she filed against Withers

5

by way of respondeat superior, as well as direct claims for negligent training, negligent supervision, negligent retention, and negligence/professional malpractice.

On July 2, 2012, Walgreen moved for summary judgment. On November 26, 2012, the trial court granted the motion in part with respect to Hinchy's claims for negligent training (against Walgreen) and invasion of privacy by intrusion (against Withers), but otherwise denied the motion.

On July 22, 2013, Hinchy's attorney tendered a trial brief to the trial court "under seal" and asked the trial court to "maintain this Trial Brief under seal until the close of evidence." Appellant's App. p. 792-93. Counsel explained why it filed the brief under seal:

> to help [the court] out with legal issues, my thought on how exhibits should go and things like that. But the reality is I submitted this with the intention that you were the only person who was going to see this until the evidence was over [because] there's stuff about instructions, there's a lot of trial strategy in there frankly.

Tr. p. 805. Hinchy's counsel never served a copy of the brief on Walgreen, and to date, Walgreen has not seen it. When Walgreen learned about the brief, it raised the issue with the trial court, argued it was improper ex parte communication, and contended that Walgreen was entitled to see it. The trial court acknowledged that it had "closely" and "actively looked through it," but had assumed Walgreen's attorney had also gotten a copy. Tr. p. 807. Over Walgreen's objection, the trial court permitted Hinchy's attorney to withdraw the brief without serving it on Walgreen.

The four-day jury trial began on July 23, 2013. Among other things, the parties argued about final jury instructions. Walgreen objected to two of Hinchy's three instructions regarding respondeat superior and to two of Hinchy's instructions regarding public disclosure of private facts. Over Walgreen's objections, the trial court permitted the jury to receive those instructions. The jury found in Hinchy's favor and found that the total amount of damages suffered by Hinchy was $1.8 million, that non-party Peterson was responsible for 20% of the damages, and that Walgreen and Withers were jointly responsible for the remaining 80%. Walgreen now appeals.

## DISCUSSION AND DECISION

### I. Summary Judgment and Directed Verdict

Walgreen first argues that the trial court erred by partially denying its motion for summary judgment and by denying its motion for a directed verdict. Specifically, Walgreen contends that it was entitled to judgment as a matter of law on Hinchy's claims for respondeat superior and negligent retention and supervision, and that those claims should never have been presented to a jury.

We apply a de novo standard of review to a trial court's order granting or denying summary judgment. Alldredge v. Good Samaritan Home, Inc., 9 N.E.3d 1257, 1259 (Ind. 2014). Therefore, we apply the same standard as the trial court: summary judgment is appropriate only where the movant demonstrates there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. Id. We resolve all questions and

7

view all evidence in the light most favorable to the non-movant, so as to not improperly deny him his day in court. Id.

A motion for a directed verdict, also known as a motion for judgment on the evidence, challenges the legal sufficiency of the evidence. Farmers Elevator Co. v. Hamilton, 926 N.E.2d 68, 75 (Ind. Ct. App. 2010). Judgment may be entered only if there is no substantial evidence or reasonable inference to be drawn therefrom to support an essential element of the nonmovant's claim. Id. We review an appeal from a directed verdict de novo, considering only the evidence most favorable to the nonmovant along with all reasonable inferences that may be drawn therefrom. Deaton v. Robison, 878 N.E.2d 499, 501 (Ind. Ct. App. 2007). A motion for a directed verdict should be granted only when the evidence is not conflicting and susceptible to only one inference, supporting judgment for the movant. Id.

## A.  Respondeat Superior Liability

Vicarious liability will be imposed upon an employer under the doctrine of respondeat superior "where the employee has inflicted harm while acting 'within the scope of employment.'" Barnett v. Clark, 889 N.E.2d 281, 283 (Ind. 2008). To fall within the scope of employment, "the injurious act must be incidental to the conduct authorized or it must, to an appreciable extent, further the employer's business." Id. An act "is incidental to authorized conduct when it 'is subordinate to or pertinent to an act which the servant is employed to perform,' or when it is done 'to an appreciable extent, to further his employer's business.'" Bushong v. Williamson, 790 N.E.2d 467, 473 (Ind.

8

2003) (quoting <u>Celebration Fireworks, Inc. v. Smith</u>, 727 N.E.2d 450, 453 (Ind. 2000))

(internal citations omitted).

In <u>Barnett</u>, our Supreme Court turned to the Restatement (Third) of Agency for

further exploration of these concepts:

> The Restatement of Agency advises that "[a]n employer is subject to vicarious liability for a tort committed by its employee acting within the scope of employment." Restatement (Third) of Agency, § 7.07(1) (2006); <u>see also</u> <u>id</u>. at § 2.04. Further, "[a]n employee acts within the scope of employment when performing work assigned by the employer or engaging in a course of conduct subject to the employer's control. An employee's act is <u>not</u> within the scope of employment when it occurs within <u>an independent course of conduct</u> not intended by the employee <u>to serve any purpose of the employer</u>." <em>Id</em>. at § 7.07(2) (emphasis added). Comment c to Section 7.07 explains that "[a]n employee may engage in conduct, part of which is within the scope of employment and part of which is not." To illustrate this principle, the Comment describes an employee driving a truck in the scope of employment, and who becomes irate at another motorist, leans out the truck cab, and shoots the driver whose conduct enraged him. While the shooting occurred in the midst of the employee's duties of employment, the shooting "is not within the scope of employment." <u>Id.</u> at § 7.07 cmt. c.

889 N.E.2d at 284. An employer is not held liable under the doctrine of respondeat

superior because it did anything wrong, but rather "because of the [employer's]

relationship to the wrongdoer." <u>Sword v. NKC Hosps., Inc.</u>, 714 N.E.2d 142, 148 (Ind.

1999).

It is well established that whether an employee's actions were within the scope of

employment is a question of fact to be determined by the factfinder. <u>Trinity Lutheran</u>

<u>Church, Inc. v. Miller</u>, 451 N.E.2d 1099, 1102 (Ind. Ct. App. 1983). Even if some of the

9

actions were unauthorized, the question of whether the actions were within the scope of employment is for the jury. Konkle v. Henson, 672 N.E.2d 450, 457 (Ind. Ct. App. 1996). Only if none of the employee's acts were authorized is the question a matter of law that need not be submitted to the trier of fact. City of Fort Wayne v. Moore, 706 N.E.2d 604, 607 (Ind. Ct. App. 1999).

Furthermore, conduct is within the scope of employment when it is "of the same general nature as that authorized, or incidental to the conduct authorized." Celebration Fireworks, 727 N.E.2d at 453. Additionally, the fact that a tortfeasor is empowered to commit the tort because of his employment weighs in favor of respondeat superior. Southport Little League v. Vaughn, 734 N.E.2d 261, 268 (Ind. Ct. App. 2000).

We find the case of Ingram v. City of Indianapolis to be instructive. 759 N.E.2d 1144 (Ind. Ct. App. 2001). In Ingram, a police officer detained and solicited sex from an exotic dancer. This Court found that several of the officer's actions were, on their face, "within the scope and arising out of the performance of a police officer's official duties." Id. at 1148. Specifically, the officer first pulled over the complainant, asked for her driver's license and registration, and administered a breath test. In another incident, the officer pulled the complainant out of a taxi, told the driver he would be arrested if he drove away with her, and then handcuffed her and placed her inside his police vehicle. The Ingram Court concluded that these actions were of the same general nature as those authorized, or incidental to the actions that were authorized, by his employer. As a result,

10

whether the actions were within the scope of the officer's employment was an issue to be determined by the trier of fact. Id. at 1148.

Here, as in Ingram, Withers's actions were of the same general nature as those authorized, or incidental to the actions that were authorized, by Walgreen. Specifically, Withers was authorized to use the Walgreen computer system and printer, handle prescriptions for Walgreen customers, look up customer information on the Walgreen computer system, review patient prescription histories, and make prescription-related printouts. Withers was at work, on the job, and using Walgreen equipment when the actions at issue occurred. Hinchy belonged to the general category of individuals to whom Withers owed a duty of privacy protection by virtue of her employment as a pharmacist. The fact that some of Withers's actions were authorized, or incidental to authorized actions, or of the same general nature as authorized actions, precludes summary judgment. In other words, Ingram dictates that whether Withers was acting in the scope of her employment was properly determined by the jury rather than as a matter of law by the trial court.

Walgreen directs our attention to Doe v. Lafayette School Corporation in support of its argument that this issue should not have gone to the jury. 846 N.E.2d 691 (Ind. Ct. App. 2006), abrogated on other grounds by State Farm Mut. Auto. Ins. Co. v. Jakupko, 881 N.E.2d 654 (Ind. 2008). In Doe, a teacher sexually molested a student, and the student sued the school under a theory of respondeat superior, contending that because the relationship began at school and the teacher used his school laptop to continue the

11

relationship, the school should be vicariously liable for his actions.  This Court affirmed summary judgment in the school's favor, noting that "simply because an act could not have occurred without access to the employer's facilities does not bring it within the scope of employment." Id. at 702.  While an employer may be liable for an employee's criminal acts, that can be the case only if the employee's actions were at least for a time authorized by the employer. Id.  An act that is done on the employee's own initiative, with no intention to perform it as part of the service for which he is employed, is an act for which the employer is not responsible. Id.

The Doe Court noted that while the teacher sent emails to the student during school hours, and also from home with his school-provided laptop, "there [was] no indication that [the school] authorized him to send emails to students for personal reasons." Id.  The Court went on to "conclude that [the teacher], on his own initiative and unrelated to any school function, instigated an intimate relationship with Doe.  In addition, we conclude that his actions were not incident to any service provided by [the school corporation], but rather were fueled entirely by self-interest in a romantic relationship with Doe." Id.  The Court found, therefore, that the employer was not vicariously liable for the employee's actions.

We find Doe to be distinguishable from the instant case.  In Doe, none of the teacher's actions were authorized by the employer.  He was not authorized to pursue a personal relationship with a student and he was not authorized to send emails of a personal nature to students.  While he used a school computer to send emails to the

12

student, he used his personal email account to do so and sent the emails from home. None of this conduct was of the same general nature as the teacher's ordinary job duties. Here, on the other hand, much of Withers's conduct was of the same general nature as her ordinary job duties, and much of her conduct was of the same general nature authorized by her employer. The Doe Court acknowledged that "[i]f some of the employee's actions were authorized, the question of whether the unauthorized acts were within the scope of employment is one for the jury." Id. at 457. Here, as stated above, some of Withers's actions were authorized. Consequently, the trial court did not err by denying Walgreen's motions for summary judgment and directed verdict and permitting the jury to rule on the issue.

Walgreen also argues that the trial court erred by permitting the jury to rule on Hinchy's claim of negligent retention and supervision. The parties agree, however, that if Walgreen were to be found vicariously liable via respondeat superior, Walgreen could not also be liable for negligent supervision and retention. Inasmuch as we have found that the trial court properly permitted the jury to consider Walgreen's liability based upon respondeat superior, we need not, and will not, address the issue of negligent retention and supervision.

### B. Underlying Liability

Although Walgreen does not appeal the jury verdict itself, we observe that for respondeat liability to attach, there must also be underlying liability of the acting party. Hinchy proceeded to trial on two separate theories of direct liability against Withers:

13

professional malpractice and public disclosure of private facts. The jury was instructed on both claims. Inasmuch as the verdict form was general, there is no way of knowing on what basis the jury found Withers—and, by extension, Walgreen—liable for Hinchy's damages. Under these circumstances, we will affirm the verdict upon any theory consistent with the evidence. Everage v. N. Ind. Pub. Serv. Co., 825 N.E.2d 941, 951 (Ind. Ct. App. 2005).

Without expressing opinion upon the recognition of the tort of public disclosure of private facts in Indiana, we turn to the tort of negligence by virtue of professional malpractice of a pharmacist. Negligence is comprised of three elements: (1) a duty on the part of the defendant to the plaintiff; (2) a breach of that duty; and (3) an injury to the plaintiff resulting from the breach. Kolozsvari v. Doe, 943 N.E.2d 823, 826 (Ind. Ct. App. 2011). Indiana law recognizes a relationship between a pharmacist and her customer that gives rise to a duty on the pharmacist's part. Hooks SuperX, Inc. v. McLaughlin, 642 N.E.2d 514, 517 (Ind. 1994). Furthermore, Indiana law provides that "[a] pharmacist shall hold in strictest confidence all prescriptions, drug orders, records, and patient information." Ind. Code § 25-26-13-15(a). Unquestionably, therefore, Withers had a duty of confidentiality to Hinchy. Also unquestionable is Withers's breach of that duty. Furthermore, Hinchy provided evidence of the damages she sustained as a result of that breach. Under these circumstances, we find that the jury verdict can be affirmed based upon the respondeat superior liability of Walgreen, which attaches via the liability of Withers for her negligence/professional malpractice.

14

## II.  Ex Parte Communication

Walgreen next argues that the verdict should be reversed because of the trial brief that Hinchy tendered to the court, under seal, without serving Walgreen with a copy.  See In re Anonymous, 729 N.E.2d 566, 569 (Ind. 2000) (noting that "[i]mproper ex parte communications undermine our adversarial system" and "threaten[] . . . the fairness of the resolution at hand").  In this case, Hinchy provided the trial court with a copy of her trial brief.  The trial court acknowledged that it had reviewed portions of the brief.  Walgreen objected and argued that it had a right to read the brief, and over Walgreen's objections, the trial court permitted Hinchy to withdraw the brief.

We do not condone this practice and strongly urge trial courts to prohibit the filing of briefs "under seal."  With obvious exceptions for trade secrets and other legally protected confidential information, nothing good can come from this practice.  Had the trial court realized that a copy of the brief had not been provided to Walgreen, the trial court should have refrained from reading it.  Inasmuch as Hinchy did not indicate to the trial court that she had ostensibly filed the brief "under seal," however, the trial court had no reason to avoid the pleading, and we find no error in that regard.  Once the trial court realized what had happened, however, the better practice would have been to have ordered Hinchy to provide a copy of the brief to Walgreen.

That said, we do not find this to be a reversible error.  Had this been a bench trial, this would be a different discussion.  The jury, as factfinder, did not see the brief that Hinchy filed and accordingly there was no jury taint.  The trial court stated that it had not

15

thoroughly reviewed the brief and Walgreen points to no separate legal or procedural error that could have only come from knowledge gained from the brief. We decline to reverse on this basis. See tr. p. 808 ("review is a generous term . . . I couldn't tell you what's in [the trial brief] quite honestly").

### III. Jury Instructions

Walgreen contends that several of the jury instructions were improper. In reviewing a trial court's decision to give a tendered jury instruction, we must determine whether the instruction (1) correctly states the law, (2) is supported by the evidence in the record, and (3) is not covered in substance by other instructions. Wal-Mart Stores, Inc. v. Wright, 774 N.E.2d 891, 893 (Ind. 2002). When an instruction is challenged as an incorrect statement of the law, we apply a de novo standard of review. Id. at 893-94. When an instruction is challenged under the other two prongs, we defer to the trial court and will reverse only for an abuse of discretion. Id. at 893. If a jury instruction incorrectly states the law, "we assume that the erroneous instruction influenced the verdict and will reverse unless the verdict would have been the same under a proper instruction." Id. at 895.

### A. Jury Instructions 8 and 10: Respondeat Superior

#### 1. Instruction 8

Final Instruction 8 reads as follows:

> An employer is liable for the wrongful acts of its employee which are committed within the scope of employment.

16

> An act is within the scope of employment if it is incidental to the employee's job duties, that is to say, the employee's wrongful act originated in activities closely associated with her job.
> In deciding whether an employee's wrongful act was incidental to her job duties or originated in activities closely associated with her job, you may consider:
> 1. whether the wrongful act was of the same general nature as her authorized job duties;
> 2. whether the wrongful act is intermingled with authorized job duties; and
> 3. whether the employment provided the opportunity or the means by which to commit the wrongful act.

Appellant's App. p. 825.

Walgreen argues that this instruction is an incorrect recitation of Indiana law with respect to its explanation of the term "incidental." It directs our attention to the Bushong definition of incidental: "An act is incidental to authorized conduct when it is subordinate to or pertinent to an act which the servant is employed to perform or when it is done to an appreciable extent, to further his employer's business." 790 N.E.2d at 473. According to Walgreen, the fact that instruction 8 makes no mention of these standards makes it erroneous as a matter of law.

Initially, we note that Walgreen's argument amounts to a position that instruction 8 is an incomplete, rather than incorrect, statement of the law. As such, Walgreen was required to tender a more complete instruction. FMC Corp. v. Brown, 526 N.E.2d 719, 731 (Ind. Ct. App. 1988). Walgreen makes no argument on appeal as to why its tendered instructions on respondeat superior would have been preferable.

17

Moreover, to the extent that Walgreen argues that the mere facts that Withers was on duty and using Walgreen equipment is insufficient to establish respondeat superior, Hinchy agrees. But we agree with Hinchy that these facts are relevant and that a reasonable jury may consider them in reaching its conclusion on the ultimate issue. Thus, the instruction is a correct statement of Indiana law.

Furthermore, the definition of "incidental" included within instruction 8 is derived from multiple sources. Celebration Fireworks, 727 N.E.2d at 453; Wilson v. Isaacs, 917 N.E.2d 1251 (Ind. Ct. App. 2009), vacated in part by 929 N.E.2d 200 (Ind. 2010); Ellis v. City of Martinsville, 940 N.E.2d 1197 (Ind. Ct. App. 2011); Smith v. Ind. Dep't of Correction, 871 N.E.2d 975, 986 (Ind. Ct. App. 2007). Additionally, to the extent that Walgreen finds fault with the clause regarding intermingling with job duties, we note that this clause likewise finds support in Indiana caselaw. Stropes v. Heritage House Childrens Ctr., 547 N.E.2d 244 (Ind. 1989); Celebration Fireworks, 727 N.E.2d at 453-54; Interim Healthcare of Fort Wayne, Inc. v. Moyer, 746 N.E.2d 429 (Ind. Ct. App. 2001); Kemezy v. Peters, 622 N.E.2d 1296 (Ind. 1993); Wilson, 917 N.E.2d at 1258. We find instruction 8 to be a correct statement of the law and decline to reverse on this basis.

### 2. Instruction 10

Final Instruction 10 reads as follows: "You are instructed that [Withers] admits she was acting in the course and scope of her employment with Walgreen Co. when she reviewed [Hinchy's] prescription information." Appellant's App. p. 827.

18

Walgreen argues that this instruction is misleading because it could have led the jury to find that Withers's admission was binding on Walgreen. See 22 Ind. Prac., Civil Trial Practice § 26.2 (observing that an "admission is not binding on any party other than the admitting party"). Over Walgreen's objection, the trial court removed a second sentence to the instruction: "You are to accept this fact as conclusive and binding as to [Withers]." Tr. p. 1027-28. The trial court removed the sentence because it made it sound as if it only applied to the case against Withers. Id. at 1028. Walgreen argues that the instruction should not have been given at all, but if it were given, should have at least included the second sentence.

Walgreen overlooks the distinction between Withers's admission being "binding" and being "relevant." While her admission was not binding as to Walgreen, it was relevant to whether she was acting in the course of her employment, which is relevant to the ultimate determination of vicarious liability. Additionally, we note that Walgreen extensively cross-examined Withers and made sure the jury understood that the admission had been made by Withers's attorney and that she did not necessarily understand what it meant. Tr. p. 690-91. Therefore, any error was cured by Walgreen's own questioning.

### B. Jury Instructions 5 and 11: Public Disclosure of Private Facts

Walgreen next argues that two of the jury instructions related to the tort of public disclosure of private facts were erroneous. Initially, we note that Walgreen is not appealing the denial of summary judgment on the claim of privacy invasion through

19

public disclosure of private facts. Instead, it is merely objecting to the jury instructions on this claim. Its entire argument with respect to Instruction 5 rests on the position that the tort is not recognized in Indiana and the jury should never have been instructed thereon. This is merely an attempt to make a back-door argument to the trial court's denial of summary judgment on this issue. Inasmuch as Walgreen has not taken the position on appeal that the trial court erred by denying summary judgment on this tort, we will not address this claim of error.

With respect to Instruction 11, Walgreen argues that it uses the so-called "Beaumont standard," which Walgreen argues has not been adopted in Indiana. We cannot agree. To establish public disclosure of private facts, a plaintiff must demonstrate that the defendant gave publicity to a matter concerning the private life of another that would be highly offensive to a reasonable person and that is not of legitimate public concern. Vargas v. Shepherd, 903 N.E.2d 1026, 1031 (Ind. Ct. App. 2009). As explained by our Supreme Court,

> In the seminal Beamont[v. Brown, 257 N.W.2d 522 (Mich. 1977),] case, the Supreme Court of Michigan held that even if a disclosure were not made to the general public, it could still be actionable if made to a "particular public" with a special relationship to the plaintiff, such as co-workers, family members, or neighbors. Id. at 531.

Doe v. Methodist Hospital, 690 N.E.2d 681, 692-93 (Ind. 1997). This Court has repeatedly held that the "particular public" standard included in Beaumont is to be applied in this State as well. See Vargas v. Shepherd, 903 N.E.2d 1026, 1031 (Ind. Ct.

20

App. 2009); Munsell v. Hambright, 776 N.E.2d 1272, 1283 (Ind. Ct. App. 2002). Under these circumstances, we do not find that Instruction 11 improperly stated the law by incorporating the Beaumont standard.[2]

### IV. Amount of Jury Verdict

Finally, Walgreen argues that the damages award was excessive and based on improper factors. A person injured by the conduct of another is entitled to reasonable compensation. Zambrana v. Armenta, 819 N.E.2d 881, 890 (Ind. Ct. App. 2005). Juries have a great deal of discretion in assessing damage awards, but this discretion, "while broad, is not limitless." Id. Where a damage award "is so outrageous as to indicate the jury was motivated by passion, prejudice, partiality, or the consideration of improper evidence, we will find the award excessive." Id. In considering this issue, we will look only at the evidence and inferences that support the jury's verdict, and will deem a verdict to be the result of improper considerations only when it cannot be explained on any other reasonable ground. Sears Roebuck & Co. v. Manuilov, 742 N.E.2d 453, 462 (Ind. 2001).

At trial, the following evidence was admitted involving Hinchy's damages:

- Withers gained information about Hinchy's private health information, including her social security number, and then shared that information with Peterson, who then shared the information with at least three other people.

---

[2] We engage in this analysis without expressing an opinion on the viability of the tort itself in Indiana. As noted above, that question is not properly raised in the context of this appeal, so we will not address it herein.

21

- Hinchy's father learned about Hinchy's use of birth control, that Hinchy had herpes, and that Hinchy had stopped taking birth control shortly before becoming pregnant.

- Hinchy testified that she experienced mental distress, humiliation, and anguish as a result of the breach. She stated that she was upset, crying, and feeling "completely freaked out . . . ." Tr. p. 416-17, 431. She felt "violated," "shocked," and "confused." Id. at 419.

- The disclosure led to Peterson berating Hinchy for "getting pregnant on purpose" and eventually extorting Hinchy by threatening to release the details of her prescription usage to her family unless she abandoned her paternity lawsuit. Id. at 423-24; 569-70.

- Hinchy testified that she experienced uncontrollable crying that affected her ability to care for her child, going to a counselor to address the emotional toll of the privacy breach, experiencing a general distrust of all healthcare providers, and feeling a persistent and continuous loss of "peace of mind." Id. at 444.

- Hinchy also testified that she now takes Celexa, an anti-depressant, which costs $75 per month. Before the breach, she had taken a weaker anti-depressant intermittently, and had not taken it for more than one year before the breach.

Walgreen directs our attention to the following facts in support of its damages argument: (1) Hinchy does not have a physical injury or condition resulting from the breach, (2) Hinchy has had no lost wages as a result of the breach, and (3) Hinchy did not offer any testimony from a medical professional or counselor supporting her claim of emotional distress. These arguments amount to a request that we reweigh the evidence, a

practice in which we do not engage when evaluating a damages award. We find that the evidence in the record supporting the award is sufficient to affirm it.[3]

We also note that the jury reduced its award by 20%, finding Peterson responsible for Hinchy's damages to that extent. This indicates "that the jury exercised its discretion to evaluate and weigh the evidence to reach a conclusion regarding damages." Reed v. Bethel, 2 N.E.3d 98, 104 (Ind. Ct. App. 2014). Consequently, we decline to disturb the damages award assessed by the jury.

## CONCLUSION

In conclusion, we have found as follows: (1) the trial court did not err denying Walgreen's summary judgment and directed verdict motions on respondeat superior liability; (2) the trial court did not commit reversible error with respect to an ex parte brief filed by Hinchy; (3) the jury instructions were not erroneous; and (4) the damages award was not excessive or based on improper factors.

The judgment of the trial court is affirmed.

KIRSCH, J., and ROBB, J., concur.

---

[3] To the extent that Walgreen directs our attention to a question asked by one of the jurors as support for its argument regarding damages, we note that Walgreen did not object to the question at trial. Consequently, we find that any argument related to this question has been waived.

23